MARK DAVID COLEMAN, AN INFANT BY HIS GUARDIAN *AD LITEM*, MICHAEL COLEMAN, PLAINTIFF-RESPONDENT, v. ABRAHAM STEINBERG AND OLGA STEINBERG, DEFENDANTS-APPELLANTS.

Argued March 4, 1969—Decided May 19, 1969.

*Mr. Thomas F. Heaney, Jr.* argued the cause for appellants (*Messrs. Carton, Nary, Witt & Arvanitis,* attorneys).

*Mr. Paul E. Anderson* argued the cause for respondent (*Messrs. Kovacs, Anderson, Horowitz & Rader,* attorneys).

The opinion of the court was delivered by

FRANCIS, J. In this tort case sounding only in negligence, the infant plaintiff, son of a tenant, sought damages against defendants-landlords for injuries suffered in the apartment rented to his parents. No *per quod* claim was interposed by the parents. Upon trial, at the close of plaintiff's proof, defendants' motion for involuntary dismissal was granted on the ground that no actionable negligence had been shown. On appeal the Appellate Division, with one judge dissenting, reversed and remanded for a new trial holding that a jury question was presented as to the landlords' liability. 103 *N. J. Super.* 271 (*App. Div.* 1968). Defendants then sought further review in this Court. *R. R.* 1:2–1(*b*).

Defendants are the owners of a two-family house, both floors of which were rented. In 1962, Mr. and Mrs. Michael Coleman became tenants of the first floor. They had two young children at that time. Thereafter the infant-plaintiff, Mark David Coleman, was born. He was just over a year old on April 6, 1964 when he was injured. Although he had not yet begun to walk, he had been crawling around the five-room apartment for some months.

The house had a central heating system. Hot water type of heat emanated from a single furnace located in the cellar. As part of the rental agreement defendants furnished heat to the tenants. There were radiators in each room and heat was sent into them through a system of pipes connected with the furnace. A thermostat regulating the temperature in both apartments was located in the Coleman apartment. In addition each radiator had a valve attachment by means of which heat flowing to a single radiator could be cut off. The radiators, described as about three feet high and three feet long, were fed by metal pipes which came up through the floor from the furnace. These up-pipes extended some distance above the floor level. The up-pipe in question, being described as extending 6 to 10 inches above the floor, joined another short pipe which was parallel with the floor and was connected with the radiator at a right angle. The cut-off valve mentioned above was located at the top of the up-pipe connection. Neither Mr. or Mrs. Coleman had ever used the valve. From the inception of the tenancy the up-pipe was not covered by any protective asbestos or insulating material, nor was there any shield or device to prevent contact with it. The same was apparently true of all the radiators, except that the one involved in this case had what appeared to be a removable flat metal cover resting on the top and extending down its sides for a few inches. The remainder of the radiator was unprotected.

On the afternoon of April 6, 1964 the infant Mark was sitting on his mother's lap in the living room She put him down on the floor and he began to crawl about. He crawled to the entrance of the next room, then down one step and apparently started to crawl to the right to go into a bedroom. Mrs. Coleman heard a cry, then a whimper. She walked over to pick him up and she saw that his left foot was caught somehow between the radiator and the up-pipe and that the lower part of his leg was caught against the pipe. She released his foot and on picking him up noticed that the flesh on the portion of the left leg which had been against the

pipe was burned away. She called the First Aid Squad immediately and took the baby to the hospital. Some idea of the temperature of the pipe can be gathered from the fact that medical examination at the hospital disclosed he had second and third degree burns of the lower left leg, although according to Mrs. Coleman he could not have been in contact with the pipe for more than one minute.

Mrs. Coleman testified she had never touched the pipe and had no idea it got hot enough to burn anyone the way it did her son. Mr. Coleman also said he had never consciously or accidentally come in contact with the pipe and likewise had no idea it would be hot enough to cause such burns. The day after the occurrence he deliberately touched it lightly and quickly with his fingers and in doing so burned them because he had not realized the extent of the heat.

The above factual outline represents the state of evidence at the close of plaintiff's case. In granting defendants' motion for dismissal, the trial court held the facts insufficient to show any violation of a legal duty owed by the landlords to the infant plaintiff. Although the articulation of the basis for the holding is not clear from the record, it seems to have been founded upon the view that mere proof that the up-pipe or the radiator or both were not shielded by a covering or a guard or some protective device was not sufficient to create an issue of defendants' negligence for determination by the jury. In reversing this ruling the Appellate Division majority, noting that as parts of the central heating system both the pipe in question and the radiator to which it was attached were under the landlords' control, held that they were under a duty to the tenants and members of the tenants' family to exercise due care to maintain the pipe in a reasonably safe condition. It then declared that the circumstances of the child's burn from the exposed pipe presented a jury question as to whether defendants had failed in the discharge of that duty and so were negligent.

Our consideration of defendants' appeal from the Appellate Division's ruling begins with an awareness of

the long-standing principle that on a rental of an apartment in a two-family dwelling, the tenant ordinarily takes the portion of the premises he rents as it is. The law assumes that he has made an inspection and is satisfied to accept the rented portion in its existing condition. In the absence of an agreement to make repairs, the landlord is under no obligation to do so. That burden falls upon the tenant. *Reste Realty Co. v. Cooper,* 53 *N. J.* 444 (1969); *Michaels v. Brookchester, Inc.,* 26 *N. J.* 379 (1958); *Bauer v. 141–149 Cedar Lane Holding Co.,* 24 *N. J.* 139 (1957). But where the dwelling contains two or more apartments which are rented to separate tenants, and the landlord reserves certain portions thereof or provides certain facilities for the common use or benefit of all the tenants, possession and control of such portions or facilities remain in him and do not pass to the tenants. In such situations the law imposes upon the landlord the duty of maintaining them in a reasonably safe condition for the use and enjoyment of the tenants. If he fails to do so and such failure results in injury to the tenant or persons on the premises as members of his family or his invitees, express or implied, ordinarily the landlord is liable for the injury. *Ellis v. Caprice,* 96 *N. J. Super.* 539, 547 (*App. Div.* 1967); *Restatement, Second, Torts,* §§ 360, 361 (1965).

In this case the Appellate Division found from the undisputed proof, and we agree, that since the landlords supplied heat to both tenants of the premises through a single-control heating unit, they must be deemed to have retained control of the entire system. That system included all of the portions thereof which entered into its operation, such as the pipes leading from the furnace throughout the building and connecting with the radiators in the rented apartments. Having retained that control, the landlords were under a duty to use reasonable care to guard against hazards to members of the tenants' family, such as the infant plaintiff, arising out of the maintenance and operation of the system. *Monohan v. Baime,* 125 *N. J. L.* 280 (*E. & A.*

1940); *Ellis v. Caprice, supra,* at 547; *Prosser, Law of Torts,* § 63 *p.* 421 (1964); 2 *Harper and James, The Law of Torts,* § 27.17, *p.* 1518 (1956).

■ Since the child was burned by the exposed up-pipe while he was crawling around the floor, the Appellate Division majority concluded, and we agree, that the jury could reasonably have found that a dangerous condition existed in the heating system, and that the defendants had failed to exercise reasonable care to guard against that clearly foreseeable kind of injury. We add that since the dangerous condition existed at the time of the letting, to the landlords' knowledge, actual or constructive, the duty to remedy came into being at the inception of the tenancy. Their liability did not depend upon receipt thereafter of further notice of the hazard in sufficient time prior to the child's injury to rectify it. The dangerous condition, if found to be such by the jury, being in existence at the time of the letting and the landlords having retained control of the heating system, they were under a continuing duty throughout the tenancy of using reasonable care to eliminate it. And, in our judgment, there can be no doubt of their right to make a reasonable entry into the tenants' apartment in order to do so.

■ We cannot close our eyes to the commonplace fact that pipes like those involved here can be protected by a covering or shield, and that a protective covering or shield is readily available for the unit of pipe and radiator at modest cost. Expert opinion on the subject is not required. And there is nothing in the record to suggest that furnishing such protection would be unreasonably burdensome. See, *Schipper v. Levitt & Sons, Inc.,* 44 *N. J.* 70, 78, 88 (1965). In this connection the regulations for the maintenance of multiple dwellings issued by the Hotel & Multiple Dwelling Health & Safety Board under *N. J. S.* 55:13A–1 *et seq.* for dwellings in which three or more units of dwelling space are rented provide among other things with respect to the central heating system that:

"* * * The heating system, including such parts as heating risers, ducts and hot water lines shall be covered with an insulating material or guard to protect occupants and other persons on the premises from receiving burns due to chance contact." Regulations for the Construction & Maintenance of Hotels & Multiple Dwellings (1968) § 1903.10(c)(3).

This regulation is not applicable as such to the two-family dwelling involved here. It does, however, reveal an awareness by an expert public agency of the existence of a hazard presented by uncovered pipes which are part of a central heating system maintained by a landlord. See, *McComish v. DeSoi*, 42 *N. J.* 274 (1964). It indicates also a conclusion by the agency that imposition of the specified duty of covering or guarding such pipes is not an arbitrary or unreasonable one. And in our opinion it supports the view that in the present case the evidence created a jury question as to whether the exposed pipe constituted a condition which was dangerous to the tenants and members of their family and whether defendants were negligent in permitting it to remain exposed and without any protective covering or guard.

We have found no case in our State directly in point with this one. However, *Thompson v. Paseo Manor South, Inc.*, 331 *S. W.* 2d 1 (*Mo. Ct. App.* 1959) is analogous and thoroughly persuasive. There the Thompson family were tenants of an apartment in defendant's multiple-dwelling building. The building had a central heating plant maintained by the landlord which supplied heat to all the apartments. This was done by vertical pipes extending from the heating unit through the various apartments to the top floor. In each apartment there were vertical and lateral pipes which carried heat to the radiators. The pipes were located close to the wall, but were uninsulated or uninclosed in any manner. The evidence disclosed that when the heating unit was in use, the pipes became hot enough to burn a person coming in contact with them. The infant plaintiff, 22 months old, fell out of her bed in the nighttime and her feet and legs

became wedged between the lateral pipe and the wall, resulting in severe burns.

It was contended that the tenant took the premises as he found them with all existing defects of which he knew or would have ascertained by reasonable inspection. The court said this general rule did not apply to facilities provided by the landlord in supplying a common service to all the tenants. Control of such facilities, including the entire heating system (of which the pipes in each apartment were a part), remained in the landlord. Thus since control of the pipes in each apartment was retained, the child's parents did not obtain full and exclusive possession and control of their apartment, and the landlord's retention carried with it the duty of using ordinary care to maintain the pipes in a reasonably safe condition. The court held that the evidence was sufficient to show that the pipes were dangerous to members of the tenants' family and that it was for the jury to say whether defendant was negligent in permitting them to remain exposed and without any protective covering or guard.

The owner contended also that in addition to meeting the minimum requirements of the Federal Housing Administration, the building was constructed in keeping with plans and specifications of similar buildings built around the time there was a great demand for living quarters in the area. In answer the court said " * * * if the condition of the heating system created a dangerous condition, as we have held, then the fact that other similar buildings were so constructed would be no defense." 331 *S. W. 2d,* at 6. Of like import are *Thomas v. Housing Authority of City of Bremerton,* 71 *Wash. 2d* 69, 426 *P. 2d* 836 (1967); *R. K. O. Midwest Corporation v. Berling,* 51 *Ohio App.* 85, 199 *N. E.* 604 (1935).

For the reasons expressed the trial court should have submitted the issue of defendants' negligence to the jury. Accordingly the judgment of the Appellate Division is affirmed and the cause is remanded for a new trial.

*For affirmance and remandment* — Chief Justice WEIN-TRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANEMAN — 6.

*For reversal* — None.