217 N.J. Super. 297 (1987)
525 A.2d 1120
CATHERINE MILACCI AND LOUIS MILACCI, PLAINTIFFS-APPELLANTS,
v.
MATO REALTY COMPANY, INC., B. ANDERSON CUSTODIAL SERVICES, AND STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 1, 1987.
Decided May 7, 1987.
*298 Before Judges DREIER and SHEBELL.
*299 Joseph D. Kaplan & Son, attorneys for appellants (Bruce H. Stern, of counsel and on the brief).
Franchino & Lenahan, attorneys for respondent, Mato Realty Company, Inc., (Elizabeth Macron, of counsel and on the brief).
Hoagland, Longo, Oropollo & Moran, attorneys for respondent, B. Anderson Custodial Services, (Andrew J. Carlowicz, Jr., of counsel and on the brief).
W. Cary Edwards, Attorney General, attorney for respondent, State of New Jersey (Michael R. Clancy, Deputy Attorney General, of counsel; Melissa Baggitt, Deputy Attorney General, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Plaintiffs, Catherine Milacci and Louis Milacci, husband and wife, appeal the entry of summary judgment in favor of defendants, Mato Realty Company, Inc., B. Anderson Custodial Services, and State of New Jersey.
Plaintiffs alleged that on September 22, 1982 at approximately 3 p.m. Catherine Milacci fell on an "accumulation of sand and dirt" on a floor in the State unemployment office as she "was going to step down onto the first step" to exit the building owned by defendant, Mato Realty Company, Inc., and leased by the defendant, State of New Jersey. The State had contracted with defendant, B. Anderson Custodial Services, for janitorial services at the premises commencing at 5 p.m. daily.
Summary judgment was granted in favor of the State as to the per quod claim of Louis Milacci on the grounds that the notice of claim filed with the State pursuant to the Tort Claims Act named only Catherine Milacci as a claimant and not her husband. Summary judgments were granted on Catherine's claim against the State of New Jersey for lack of proof as to how long the sand and dirt were present and in favor of B. *300 Anderson Custodial Services against both plaintiffs because of no showing that the condition existed the evening previous to Catherine's fall when the janitorial service was last on the premises. Plaintiffs' claims were dismissed as to Mato Realty Company, Inc. on the grounds that the premises had been leased to the State who had exclusive control.
The criteria governing summary judgment motions are contained in R. 4:46-2:
The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
The motion judge must determine if there is a "genuine issue as to material fact, but not decide the issue if [the court] finds it to exist." Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73 (1954). "[T]he absence of undisputed material facts must appear `palpably.' All inferences of doubt are drawn against the movant in favor of the opponent of the motion." Id. at 74-75. However, an opposing party who offers no substantial or material facts in opposition to the motion cannot complain if the court takes as true the uncontradicted facts in the movant's papers. Id. at 75. "Bare conclusions in the pleadings, without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." United States Pipe & Foundry Co. v. American Arbitration Association, 67 N.J. Super. 384, 399-400 (App.Div. 1961). If the court finds that no issue of material fact does exist, it then must decide if the movant is entitled to judgment as a matter of law. R. 4:46-2; Millison v. E.I. duPont de Nemours & Co., 101 N.J. 161, 167 (1985).
On appellate review this court is required to determine whether the trial court's order of summary judgment was proper. If any issues of material fact exist or if, under the applicable substantive law, drawing all inferences of doubt against the movant and in favor of the opponent of the motion, *301 the movant is not entitled to judgment as a matter of law, this court must reverse the order of the trial court.
We find no factual allegations in the record which suggest Mato's liability. All parties appear to agree that the State had exclusive control of the premises even though no copy of the lease between the State and Mato was offered for the record. The State's contract for custodial services reinforces the State's apparent exclusive control over the premises. Plaintiff does not contend that the dangerous condition existed at the time of the original possession by the State, but urges nonetheless that Mato "had a non-delegable duty to see that the premises were in a safe condition when the Plaintiff exited the building."
We find no authority which would permit us to apply such a proposition to a situation where, as here, the landowner has not been shown to have retained control of the area where the injury occurred and where the dangerous condition alleged was obvious, not latent, and was transient requiring only simple maintenance. See, e.g., Patton v. The Texas Co., 13 N.J. Super. 42, 46-47 (App.Div.), certif. den. 7 N.J. 348 (1951). See also Shill v. Careage Corp., 353 N.W.2d 416, 419-420 (Iowa 1984) (evidence conclusively indicating that landlord through lease had surrendered control of premises to exclusive tenant who in turn was responsible for all repairs and maintenance did not support negligence action by tenant's employee-business invitee against landlord). Cf. Restatement, Torts (Second) §§ 343 & 355 at 215-216 & 239 (1965 & App. 1987); Antenucci v. Mr. Nick's Mens Sportswear, 212 N.J. Super. 124, 128-129 (App. Div. 1986); Marzotto v. Gay Garment Co., 11 N.J. Super. 368, 372 (App.Div.), aff'd 7 N.J. 116 (1951); De Los Santos v. Saddlehill, Inc., 211 N.J. Super. 253, 261-262 (App.Div. 1986). Mato was properly granted summary judgment.
We turn next to the issues concerning the liability of the State and the maintenance company. Where, as here, there is no proof of actual notice, a public entity, in this instance the State, may be held liable for injury caused by a condition of its *302 property if it was in such a dangerous condition that it created a reasonably foreseeable risk of the kind of injury which occurred, provided the public entity had constructive notice of the dangerous condition "a sufficient time prior to the injury to have taken measures to protect against the dangerous condition ..." and the public entity's action "to protect against the condition or the failure to take such action was ... palpably unreasonable." N.J.S.A 59:4-2. A public entity is deemed to have constructive notice of a dangerous condition "... only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3. Cf. Brown v. Racquet Club of Bricktown, 95 N.J. 280, 290-291 (1984); Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 141 (1951).
The State was the possessor and proprietor of the premises. As such its duty is clearly spelled out under N.J.S.A. 59:4-2 & 3. The State contracted with Anderson to maintain the premises free of dangerous conditions such as the plaintiffs allege existed here, at least to the extent that such condition would not carry over from one day to the next. See Restatement (Second), Torts § 383 at 287 (1965 & App. 1987). Drawing all inferences in favor of plaintiffs, as we must, the facts present a jury question as to each defendant's constructive notice of a dangerous condition created by an accumulation of dirt and sand. Plaintiffs' allegations were supported by certified interrogatories. Their description of the conditions as an "accumulation of sand and dirt" indicates prima facie that the condition existed for some period of time. From this a jury might reasonably infer that the time involved was sufficient for the State and the custodial service to have discovered the condition. See Zizi v. Gabriele D'Annunzio Lodge No. 22, 14 N.J. Super. 200, 204 (App.Div. 1951) (where plaintiff fell after stepping on slippery refuse on stairs, inferred time lapse of 45 minutes between littering of stairs and consequential fall may *303 create a jury question of notice if it is established that defendant or defendant's employees are frequently or continuously about the place where the condition exists and thus have greater reason and opportunity to detect and remedy it before injury to patron) (dictum); Ratering v. Mele, 11 N.J. Super. 211, 213-214 (App.Div. 1951) (when plaintiff fell on stairs littered with cigarette butts, matches and paper, evidence indicating accumulation of litter over two and one-half hour period without inspection by defendant presented issue for jury's consideration as to whether the condition of the stairs had existed for sufficient time to have been discoverable and remediable in exercise of due care before the injury occurred). See generally Annotation, Liability of proprietor of store, office, or similar business premises for injury from fall due to presence of litter or debris on stairway, 61 A.L.R.2d 174 (1958 & Supp. 1986). A jury may then infer that the State or the custodial service was negligent in not removing the condition and/or the State was negligent in not directing the custodial service to do so. The reasonable inferences required a denial of the summary judgment motions as to the State and Anderson.
Plaintiff, Louis Milacci, alleges that the Law Division erred in dismissing his claim against the State of New Jersey for failure to file a notice of claim pursuant to N.J.S.A. 59:8-3 et seq. The record reveals that Catherine J. Milacci on November 18, 1982 completed the official form entitled "Claim for Damages Against the State of New Jersey" which included an authorization to permit the State to obtain from all doctors, hospitals and other medical services, any records, reports or other information concerning treatment rendered to her. In the form submitted Catherine noted her accident on September 22, 1982 at 3:30 p.m. in Trenton when she "slipped & fell on an accumulation of sand & dirt while about to exit building occupied by N.J. State Unemployment Office."
There is no place provided on the form to note the claimant's marital status or to otherwise indicate that there may be a per quod claim by a spouse. It was specifically indicated on the *304 form that there was a personal injury claim involved. A description of Catherine's injuries was set forth including the assertion that the injuries were believed to be permanent. The dollar amount of the claim was noted to be $250,000. There is a reference to the plaintiff Louis on the claim form where it inquired as to whether any losses or expenses were covered by a policy of insurance. It was therein stated: "Blue Cross, Blue Shield, Major Med Pol # XXXX-XX-XXXX Group # 0058328 (N/O Louis B. Milacci DOB 4/5/49)." The claim of the wife was timely filed, but no separate claim was filed for her husband's per quod claim. The motion judge in dismissing the husband's claim stated only that "... the husband, there was not [sic] notice of claim filed by him, so the matter will be dismissed as it applies to the State of New Jersey so far as the per quod claim is concerned."
The State points out that no attempt was made to file a timely notice of claim for Louis and that no leave was sought to file a late notice of claim within the one year period following the accrual of his claim. N.J.S.A. 59:8-8. The State relies upon the holding in Madej v. Doe, 194 N.J. Super. 580, 586 (Law Div. 1984) that the per quod claim of the husband is barred where the governmental entity had not received any notice with regard to the per quod claim.
The only distinction we are able to perceive factually between the case before us and the Madej case is that here the husband's name and date of birth appear on the form to identify the medical insurance coverage available for payment of his wife's injuries. The court in Madej, 194 N.J. Super. at 586, distinguished the New York case of Application of Charlemagne, 277 A.D. 689, 102 N.Y.S.2d 661, aff'd sub nom. Charlemagne v. City of New York, 302 N.Y. 871, 100 N.E.2d 52 (1951), wherein a wife was allowed to serve a late notice of claim after the expiration of the 60 day filing period where her husband's per quod claim had been filed within the period, but through inadvertence her claim had not been filed although it *305 was prepared. The New York court held that there had been substantial compliance with the statute.
The State does not allege prejudice and none is apparent to us, as full and timely notice was given of the circumstances surrounding the accident and injuries, together with the authorization to investigate the claim through access to doctors, hospital and other medical service facilities. It is clear that the State could have through reasonable investigation or inquiry determined that a per quod claim existed.
N.J.S.A. 59:8-4 specifically enumerates the items that are to be contained in the notice of claim "presented by the claimant or by a person acting on his behalf...." That provision does not set forth any requirement with respect to indicating one's marital status and, although it requires the inclusion of the estimated amount of any damages or loss, it makes no distinction with respect to whether the bills are paid by or are the responsibility of the injured party or the party's spouse. N.J.S.A. 59:8-6 specifically authorizes the adoption of "forms specifying information to be contained in claims filed" and permits a public entity to adopt forms to include additional information or evidence pertaining to the medical aspects of personal injury claims. The Attorney General is also specifically authorized under this section "to issue rules and regulations on behalf of the State for the purpose of eliciting the types of information referred to in this section and for specifying any additional information which may be reasonably necessary for the administrative disposition of claims under the act."
N.J.S.A. 59:8-3 states: "No action shall be brought against a public entity under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." (emphasis added). The civil action complaint which plaintiffs filed to include the per quod claim of the husband is generally speaking based upon the claim which was presented in the notice filed by the wife. The sections pertaining to the filing of claims specifically provide *306 that a claim may be filed and signed by some other person on behalf of the claimant. N.J.S.A. 59:8-4 & 5. N.J.S.A. 59:8-8 likewise uses language that does not totally proscribe filing of a per quod action based upon the timely presentation of the main claim. It states that "[a] claim relating to a cause of action for death or for injury to person or to property shall be presented as provided in this chapter...." (emphasis added).
The statute is unclear as to whether a separate notice of claim need be filed as to a per quod claim. In light of the ambiguity, we believe it would be unjust to bar the claim here. It was within the ability of the State to obtain immediate information concerning the claim even without investigation by adopting appropriate forms pursuant to the authority of N.J.S.A. 59:8-6. Further, we see no evidence that the Legislature intended that both a husband and wife should have the burden of each completing the lengthy claim forms that have been developed by the State. The information called for as to both claims would be identical in virtually every aspect. The State claim form completed by Catherine contained over 40 items. The State would only have had to include two or three additional questions on the form to obtain specific information concerning the husband's per quod claim if it considered it essential. So too, any investigation made by the State to determine the merits of the wife's claim necessarily would cover the same ground as the per quod claim of the husband. If the notice filed by the wife had included the words "and on behalf of my husband" there could be no doubt that his claim would be fully protected. We do not believe he should be deprived of his day in court because of so minor an omission. In light of N.J.S.A. 59:8-6 we perceive of no evil or harm which will befall governmental agencies because of our holding. We disapprove the holding of the Law Division in Madej.
We affirm the entry of summary judgment in favor of Mato Realty Company, Inc. We reverse all orders of summary *307 judgment previously entered in favor or the State of New Jersey and B. Anderson Custodial Services.