295 N.J. Super. 521 (1996)
685 A.2d 520
DANIEL MCBRIDE AND HELENA MCBRIDE, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
PORT AUTHORITY OF NEW YORK AND NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 19, 1996.
Decided December 6, 1996.
*522 Before Judges MICHELS, MUIR, Jr., and COBURN.
Philip L. Geibel argued the cause for appellant (Stevens & Minter, attorneys; Mr. Geibel, on the brief).
Charles R. Cohen argued the cause for respondents (Pearl, Levy and Cohen, attorneys; Mr. Cohen, on the brief).
The opinion of the court was delivered by COBURN, J.S.C. (temporarily assigned).
The dispositive issue posed by this appeal is whether an employee of a commercial tenant in exclusive possession may hold the tenant's landlord responsible for personal injuries suffered on the leased premises, due to a lack of proper maintenance or repair, when the lease unquestionably places responsibility for such maintenance or repair solely upon the tenant. Since we are convinced there is no landlord liability in such circumstances, we reverse the judgment obtained as a result of the jury's verdict for plaintiffs and remand for entry of a judgment in favor of defendant.
*523 On February 18, 1964, defendant Port Authority of New York and New Jersey entered into a lease with Hudson Refrigerating Company. The leased premises consisted of about 60 acres of land and a 300,000 square foot warehouse. This lease, which continued to govern the parties' rights at all times relevant to this action, provided:
SECTION 7. Maintenance and Repair
(a) The Lessee shall at all times keep the premises clean, and in an orderly condition and appearance, together with all the fixtures, equipment and personal property of the Lessee located in or on the premises.
(b) The lessee shall repair, replace, rebuild and paint all or any part of the premises which may be damaged or destroyed by the acts or omissions of the Lessee or by those of its officers, employees or of other persons on or at the premises with the consent of the Lessee.
(c) With respect to all parts of the premises, including, but without limitation thereto, such of the following as are or may be during the term of the letting located in or on the premises: fences, the exterior and interior of the building walls, the exterior and interior and operating mechanisms of and attachments to windows and skylights, screens, roofs, foundations, steel work, columns, the exterior and interior and operating mechanisms of and attachments to doors, partitions, floors, ceilings, inside and outside paved and unpaved areas, glass of every kind, and the utility, mechanical, electrical and other systems, the Lessee shall take the same good care of the premises that would be taken by a reasonably prudent owner who desired to keep and maintain the same so that at the expiration or termination of the letting and at all times during the letting, the same (or a reconstruction of all or any part thereof) will be in a good condition as at the commencement thereof (or, in the case of improvements made during the letting hereunder in as good condition as at the time of the installation or construction thereof), except for reasonable wear which does not adversely affect the watertight condition or structural integrity of the building or other structures on the premises or adversely affect the efficient or the proper utilization of any part of the premises. To that end, the Lessee shall make frequent periodic inspections and, from time to time as the necessity therefor arises and regardless of the cause of the condition requiring the same, the Lessee shall perform all necessary preventive maintenance including but not limited to painting (the exterior of the building, areas of joint or common use and areas visible to the general public to be painted in colors which have been approved by the Port Authority), and, except under circumstances as set forth in paragraph (a) of Section 8 of these Terms and Conditions, the Lessee shall make all necessary repairs and replacements and do all necessary rebuilding with respect to all parts of the premises, all of which shall be in quality equal to the original in materials and workmanship and regardless of whether such repairs and replacements are structural or non-structural, ordinary or extraordinary, foreseen or unforeseen. The Lessee shall commence to perform each of its obligations hereunder within twenty days after notice from the Port *524 Authority and shall thereafter continue the same to completion with reasonable diligence.
SECTION 13. Rights of Entry Reserved
(a) The Port Authority, by its officers, employees, agents, representatives and contractors shall have the right at all reasonable times to enter upon the premises for the purpose of inspecting the same, for observing the performance by the Lessee of its obligations under this Agreement, and for the doing of any act or thing which the Port Authority may be obligated or have the right to do under this Agreement or otherwise.
(b) Without limiting the generality of the foregoing, the Port Authority, by its officers, employees, agents, representatives, and contractors, and furnishers of utilities and other services, shall have the right, for its own benefit, for the benefit of the Lessee, or for the benefit of others than the Lessee at the Facility, to maintain existing and future utility, mechanical, electrical and other systems and to enter upon the premises at all reasonable times to make such repairs, replacements or alterations as may, in the opinion of the Port Authority, be deemed necessary or advisable and, from time to time, to construct or install over, in or under the premises new systems or parts thereof, and to use the premises for access to other parts of the Facility otherwise not conveniently accessible; provided, however, that in the exercise of such rights of access, repair, alteration or new construction the Port Authority shall not unreasonably interfere with the use and occupancy of the premises by the Lessee.
* * * * * * * *
(d) Nothing in this Section shall or shall be construed to impose upon the Port Authority any obligations so to construct or maintain or to make repairs, replacements, alterations or additions, or shall create any liability for any failure so to do. The Lessee is and shall be in exclusive control and possession of the premises and the Port Authority shall not in any event be liable for any injury or damage to any property or to any person happening on or about the premises nor for any injury or damage to the premises nor to any property of the Lessee or of any other person located in or thereon (other than those occasioned by the acts of the Port Authority).
For purposes of this appeal, we will assume there was sufficient evidence to establish that plaintiff Daniel McBride, an employee of Hudson Refrigerating Company, was injured on May 2, 1992, when the vehicle he was operating on his employer's loading dock at the leased premises struck a hole which caused the vehicle to jerk, throwing him to the ground and seriously fracturing his heel. We will also assume that the loading dock had many similar holes and that a party with a duty of reasonable care would not have permitted these conditions to exist. However, we cannot assume that the loading dock's condition in 1992 reflected its condition in *525 1964 when the lease was executed since there was no evidence on that point.
The plaintiffs' thesis that a commercial landlord should be held responsible to a tenant's employee injured on the leased premises because it reserved the right to enter the leased premises to perform repairs is inconsistent with the law of this State. Michaels v. Brookchester, Inc., 26 N.J. 379, 140 A.2d 199 (1958); Faber v. Creswick, 31 N.J. 234, 156 A.2d 252 (1959); Coleman v. Steinberg, 54 N.J. 58, 253 A.2d 167 (1969).
In Michaels, the Court began its analysis observing that "[h]istorically a lease was viewed as a sale of an interest in land." 26 N.J. at 382, 140 A.2d 199. As a result, the landlord was not responsible to maintain the leased premises. Ibid. The Court then noted the development of two common law exceptions to the general rule: (1) a landlord is responsible to use reasonable care with regard to portions of the leased premises which are "not demised and remain in the landlord's control[,]" ibid. (citations omitted); (2) a landlord's covenant to repair gives rise to a duty to the tenant to use reasonable care to protect the tenant from injury arising from defects in the property. Id. at 383-85, 140 A.2d 199.
In Faber, the Court overruled Clyne v. Holmes, 61 N.J.L. 358, 39 A. 767 (Sup.Ct. 1898) and extended the protections afforded by Michaels to an injured party who was not a tenant on the lease where the landlord had breached a written covenant to maintain the leased premises in good repair. 31 N.J. at 241-42, 156 A.2d 252. The Court also mentioned another longstanding exception to the general common law tenet: "a landlord, knowing of an actually or deceptively concealed dangerous condition on the premises, is under a duty to disclose it to the tenant at or prior to the transfer of possession." Id. at 242, 156 A.2d 252.
In Coleman v. Steinberg, the Court, speaking of the common law, said: "In the absence of an agreement to make repairs, the landlord is under no obligation to do so. That burden falls upon the tenant." 54 N.J. at 63, 253 A.2d 167.
*526 We note, in passing, that the principles of Michaels, Faber, and Coleman continue to represent the law of this State despite those cases which have held with respect to public sidewalks that a landlord may not shield itself from liability to sidewalk users by transferring exclusive control of the abutting demised premises to a tenant. See, e.g., Krug v. Wanner, 28 N.J. 174, 145 A.2d 612 (1958); Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 432 A.2d 881 (1981); Vasquez v. Mansol Realty, 280 N.J. Super. 234, 655 A.2d 82 (App.Div. 1995). While some states have imposed a general tort duty of reasonable care upon landlords which may not be avoided by lease provisions, Prosser and Keeton on Torts, § 63, at 446 (Fifth Edition, 1984), our Supreme Court has not yet accepted that concept, and plaintiff has not contended in the court below or in this court that it should be incorporated into our common law. Furthermore, in Milacci v. Mato Realty Co., Inc., 217 N.J. Super. 297, 301, 525 A.2d 1120 (App.Div. 1987), we expressly rejected the opportunity to so hold.
In Michaels the Court said:
We are satisfied that a landlord's covenant to repair gives rise to a duty in tort with liability to the tenant for damages consequential to a negligent failure to perform, and that such liability is not dependent upon nor limited by the tensile strength of the concept of reserved control.
[26 N.J. at 385, 140 A.2d 199.]
The Court went on to discuss the particular lease in question and concluded that it contained "no clearcut promise by the tenant or landlord with respect to the repair of the defect here involved." Id. at 388, 140 A.2d 199. Thus, a jury question arose. Ibid. However, the Court clearly stated that lacking ambiguity construction of the lease was a matter of law to be decided by the court. Id. at 387, 140 A.2d 199.
The contractual arrangement between defendant Port Authority of New York and New Jersey and the injured plaintiff's employer, Hudson Refrigerating Company, set forth above, contains no ambiguity with regard to responsibility for maintenance and repairs with regard to the loading dock which was the site of the accident. Section 7 places the onus on the lessee. And although *527 Section 13 reserves a right in the landlord to perform repairs if the tenant fails to meet its contractual obligations, it contains no covenant by the landlord to do so. Furthermore, unlike the lease considered in Michaels, in Section 13(d) the following unambiguous clause appears:
(d) Nothing in this Section shall or shall be construed to impose upon the Port Authority any obligations so to construct or maintain or to make repairs, replacements, alterations or additions, or shall create any liability for any failure so to do. The Lessee is and shall be in exclusive control and possession of the premises and the Port Authority shall not in any event be liable for any injury or damage to any property or to any person happening on or about the premises nor for any injury or damage to the premises nor to any property of the Lessee or of any other person located in or thereon (other than those occasioned by the acts of the Port Authority).
Defendant moved for a directed verdict on this point at the end of the plaintiffs' case and again at the end of the entire case. R. 4:37-2(b). The trial court erred in denying the motions. Defendant was entitled to judgment for the reasons stated above.
In light of our disposition of this issue, we need not address the other issues raised by defendant.
Reversed and remanded for entry of judgment in favor of defendant.