```
┌─────────────────────────────────────────────────────┐
│          NOT FOR PUBLICATION WITHOUT THE             │
│          APPROVAL OF THE APPELLATE DIVISION          │
│                                                      │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│ Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R. 1:36-3. │
└─────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2894-16T1

BALDWIN SHIELDS and
TRICIA SHIELDS, his wife,

 Plaintiffs-Appellants,

v.

RAMSLEE MOTORS,

 Defendant,

and

608 TONNELLE AVENUE, LLC,

 Defendant-Respondent.

_____

 Argued February 28, 2018 — Decided August 20, 2018

 Before Judges Fuentes, Manahan and Suter.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Docket No. L-6329-
 14.

 Kristian A. Krause argued the cause for
 appellants (Goldstein, Ballen, O'Rourke &
 Wildstein, attorneys; Kristian A. Krause, on
 the brief).

 Patrick J. Reilly, III, argued the cause for
 respondent (Clark & Fox, attorneys; Michael

R. Fox and Patrick J. Reilly, III, on the brief).

PER CURIAM

At all times relevant to this case, plaintiff[1] Baldwin Shields was employed by Federal Express to deliver packages. At approximately 10:30 a.m. on February 6, 2014, plaintiff delivered an envelope to Ramslee Motors, a car dealership located at 608 Tonnelle Avenue in Jersey City. Plaintiff parked the Federal Express vehicle on the street next to the sidewalk that abuts the driveway of the property. At his deposition, plaintiff testified that the dealership's driveway was covered with snow and ice and no salt or other deicing agent had been applied. After he delivered the envelope, plaintiff began to walk back to the vehicle when he slipped and fell on the ice covered driveway.

Plaintiff testified that he was "unconscious" immediately after the fall. After he regained consciousness, he tried "to jump up," but noticed he could not move; he felt "excruciating pain" from his neck down the left side of his back. Emergency Medical Technicians who responded to the 911 call transported him by ambulance to the Jersey City Medical Center. The fall injured his neck, lower back, and both shoulders.

---

[1] Although Tricia Shields has filed a derivative per quod claim as Baldwin Shields' spouse, we will refer to "plaintiff" in the singular.

Plaintiff filed a personal injury suit against both Ramslee Motors (Ramslee), as the commercial tenant of the premises at the time of the accident, and 608 Tonnelle Avenue, LLC, (608 Tonnelle), the owner of the property. Neither defendant filed a cross-claim or sought indemnification from the other. After joinder of issue, 608 Tonnelle moved for summary judgment against plaintiff, claiming that under the commercial lease agreement it had with Ramslee, the tenant is contractually obligated to maintain the property clear of snow and ice.

At oral argument before the motion judge, counsel for 608 Tonnelle also claimed that one of the owners of Ramslee "admitted that he was responsible for snow and ice [removal] under [the] demised premises." Thus, counsel argued that "[t]here is no dispute" that 608 Tonnelle was not in possession of the commercial land and did not retain "any portion of control." 608 Tonnelle did not include Ramslee in its notice of motion, and Ramslee did not attend or participate in any way in the oral argument session before the Law Division Judge.

In the course of oral argument, the motion judge noted that the lease agreement does not include a provision expressly allocating the responsibility to clear snow and ice to the tenant. In response, counsel for 608 Tonnelle acknowledged that "the lease does not say, snow and ice removal, it says maintain." Relying

on this court's holding in <u>McBride v. Port Auth. of N.Y. and N.J.</u>, 295 N.J. Super. 521, 525 (App. Div. 1996), counsel continued to argue that an "out-of-possession" commercial landlord did not have a common law duty to a business invitee to maintain its property clear of snow and ice.

Plaintiff's counsel conceded the relevancy of the legal paradigm advocated by 608 Tonnelle's counsel, but argued that the lease agreement did not address or allocate which party had the responsibility for snow and ice removal. The motion judge found that Ramslee's admission that the tenant was responsible for the removal of snow and ice cured this deficiency. Relying on both <u>McBride</u> and <u>Milacci v. Mato Realty Co.</u>, 217 N.J. Super. 297, 301 (App. Div. 1987), the motion judge found 608 Tonnelle was not liable to plaintiff. The judge held that "since the lease in this case unquestionably placed responsibility for maintenance on Ramslee, and the condition that caused the injury was both obvious and [transient] in nature, 608 [Tonnelle] cannot be held liable for the plaintiff's injuries as a matter of law."

Plaintiff's counsel also argued that even if the lease agreement provided for this type of allocation of civil liability between the parties, 608 Tonnelle retained a non-delegable duty to plaintiff as a business invitee. The motion judge rejected

this argument as well. Plaintiff now appeals asking us to reverse the Law Division's legal conclusion.

We review the grant of a motion for summary judgment de novo. We apply the standard codified under Rule 4:46-2 without according any deference to the motion judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). After reviewing the record presented by the parties, we now reverse. It is well-established that a commercial landlord has a duty to maintain the sidewalks abutting its property in a reasonably good condition, Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 149 (1981), including the removal of snow and ice, Mirza v. Filmore Corp., 92 N.J. 390, 400 (1983). Here, the lease agreement between the landlord and the commercial tenant is silent on which one has the duty to maintain the driveway leading to the building on the property clear of snow and ice. This is not an area of the property where the landlord does not have access without the tenant's consent.

In Vasquez v. Mansol Realty Assocs., Inc., 280 N.J. Super. 234, 238 (App. Div. 1995), this court held "a commercial landowner is liable to an innocent third party injured as the result of the negligent failure of its tenant to exercise due care in removing or reducing the hazard of snow and ice accumulations on an abutting public sidewalk, even though the landowner has allocated that

responsibility by contract to its tenant." In reaching this conclusion, we explained:

> This is not a situation where the owner has vested a tenant with exclusive possession and no longer has the power of entry into the premises to make repairs. In such case, to hold the owner liable for injuries to a passerby due to a condition of disrepair over which it has relinquished access is unfair. The same, however, cannot be said about a public sidewalk.
>
> [Id. at 237.]

We discern no legal or public policy distinction between a sidewalk and an open driveway used with regularity by plaintiff and other business invitees of Ramslee's car dealership. The two cases from this court relied on by the motion judge are materially distinguishable from the facts of this case. In McBride:

> The dispositive issue . . . [was] whether an employee of a commercial tenant in exclusive possession may hold the tenant's landlord responsible for personal injuries suffered on the leased premises, due to a lack of proper maintenance or repair, when the lease unquestionably places responsibility for such maintenance or repair solely upon the tenant.
>
> [McBride, 295 N.J. Super. at 522 (emphasis added).]

The landlord in McBride was the Port Authority of New York and New Jersey (Port Authority). The tenant, Hudson Refrigerating Company, leased from the Port Authority approximately sixty acres of land and a 300,000 square foot warehouse. Id. at 523. The

6

parties entered into a lengthy, meticulously detailed lease agreement that unambiguously delegated the responsibility for maintaining the demised premises to this sophisticated commercial tenant. Id. at 524. The plaintiff, an employee of the tenant, was injured on the job site "when the vehicle he was operating on his employer's loading dock at the leased premises struck a hole which caused the vehicle to jerk, throwing him to the ground and seriously fracturing his heel." Ibid. In rejecting the plaintiff's argument seeking to invalidate the Port Authority's delegation of responsibility via contract, we expressly distinguished the line of cases that precluded commercial landlords from avoiding responsibility for sidewalk liability. Id. at 526.

The same legal and public policy considerations were applied by this court in Milacci where we upheld the Law Division's order granting summary judgment to the commercial landlord that had leased the entire premises to the State of New Jersey. Milacci, 217 N.J. Super. at 301. The plaintiff in Milacci sought to hold the State's landlord liable as a result of her falling on an "'accumulation of sand and dirt' on a floor in the State unemployment office as she 'was going to step down onto the first step' to exit the building . . . ." Id. at 299. We rejected the

plaintiff's argument to impose a non-delegable duty to the landlord based on the following uncontested facts:

> All parties appear to agree that the State had exclusive control of the premises even though no copy of the lease between the State and [the landlord] was offered for the record. The State's contract for custodial services reinforces the State's apparent exclusive control over the premises. Plaintiff does not contend that the dangerous condition existed at the time of the original possession by the State . . . .
>
> [Id. at 301.]

Here, the material facts are sufficient to distinguish the legal reasoning that drove our decisions in McBride and Milacci, the two cases relied on by the motion judge to grant summary judgment in favor of 608 Tonnelle. The lease agreement entered into by the tenant and the landlord here does not mention which party has the responsibility for the removal of snow and ice from areas of the property commonly used by third parties such as plaintiff. Snow accumulation and icy conditions are common, recurrent conditions in this State. It is also well-established that our Supreme Court has imposed a non-delegable duty on commercial landlords to protect the public from this seasonal hazard by keeping public sidewalks clear.

Our Supreme Court has made clear that "[w]hether a person owes a duty of reasonable care toward another turns on whether the

imposition of such a duty satisfies an abiding sense of basic fairness under all the circumstances in light of considerations of public policy." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993); see also Monaco v. Hartz Mountain Corp., 178 N.J. 401, 418 (2004). "The imposition of a duty requires the balancing of several factors, including 'the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Nielsen v. Wal-Mart Store #2171, 429 N.J. Super. 251, 257 (App. Div. 2013) (quoting Hopkins, 132 N.J. at 439).

The lease agreement upon which both the landlord and the motion judge rely on to support this immunity does not address this critical issue. The tenant's post hoc acknowledgement of this responsibility is, at the very least, an issue of fact for the jury to decide, or legally inconsequential given its omission in the lease agreement. Under these circumstances, we hold that 608 Tonnelle owed a duty to plaintiff, and other third-party business invitees, to ensure that the driveway abutting the sidewalk of its property was clear of snow and ice.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2894-16T1