**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0335-17T2

GERALD WARD,

     Plaintiff-Appellant,

v.

BAYONNE INDUSTRIES, INC.,
EAST JERSEY RAILROAD &
TERMINAL CO., and BAYONNE
TERMINAL WAREHOUSE CORP.,

     Defendants-Respondents,

and

LEHIGH MARINE, LLC,

     Defendant.

_____

> Argued November 14, 2018 – Decided January 2, 2019
>
> Before Judges Yannotti, Rothstadt and Gilson.
>
> On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2116-15.
>
> Bruce S. Gates argued the cause for appellant.

Christopher S. Byrnes argued the cause for respondents (Law Office of John P. Cascio, attorneys; Christopher S. Byrnes, on the brief).

PER CURIAM

Plaintiff appeals from an order of the Law Division dated July 21, 2017, which granted summary judgment in favor of Bayonne Industries, Inc. (BI), and an order dated September 5, 2017, which denied his motion for reconsideration of the July 21, 2017 order. We affirm.

I.

This appeal arises from the following facts, as detailed in the record presented to the trial court. BI is the owner of certain property on East 22nd Street in Bayonne, known as the Bayonne Terminal. Since at least 1959, East Jersey Railroad & Transportation Company (EJRR) has leased portions of the property for railroad purposes. On December 30, 1983, BI and Bayonne Terminal and Warehouse Corporation (BT) leased the property to IMTT-Bayonne (IMTT). The leased premises "include[ed] the land and all improvements thereon, tanks, lines, docks, machinery, equipment, and appurtenances of every kind thereunto[,]" but not any of EJRR's assets.

Among other things, the lease required IMTT "to operate, administer and conduct the business of a bulk storage terminal and related uses at the Bayonne

2

Terminal in a prudent, safe and competent manner." The lease also required IMTT to:

> maintain the leased premises, and all improvements, machinery, equipment and movables located thereon, in good condition, and shall make at its own expense all repairs of any kind, whether ordinary or extraordinary, provided that any structural alterations to the improvements of the leased premises shall be subject to prior approval of the Lessor.

The lease further provided that IMTT "accepts the leased premises, and all appurtenances and movables located thereon, in their present condition." The lease term was five years, through December 31, 1988. Thereafter, BT merged into BI.

On October 18, 1986, BI and IMTT leased a portion of the premises to Cogen Technologies (CT) for use as a cogeneration facility. On December 30, 1988, BI and IMTT renewed their lease on the same terms and conditions, through December 31, 1993. The parties did not provide the trial court with copies of any written agreements between BI and IMTT extending their lease after December 31, 1993.

On December 1, 2003, BI, IMTT, and Bayonne Plant Holding LLC (BPH), Cogen Technologies's successor, amended the October 18, 1986 lease. Among other things, the amendments granted BPH an option to lease certain additional

A-0335-17T2

property. On November 6, 2012, EJRR, BI, and Consolidated Rail Corporation (Conrail) entered into an operating and premises use agreement, which allowed Conrail to operate on BI and EJRR's property and trackage.

Plaintiff began working for IMTT on June 5, 2000, as a gate guard. IMTT later promoted plaintiff to the so-called "labor pool," and eventually assigned him to work as a bulk oil dock operator. In that capacity, plaintiff loaded and unloaded oil from ships and barges. As part of his job, plaintiff was required to wear a hard hat, safety glasses, gloves, a life vest, and safety shoes.

On May 18, 2013, plaintiff was working on a pier at the Bayonne Terminal, where ships and barges load and offload oil. Plaintiff began walking to the side of the pier to activate a pump. He tripped on a grate, stumbled head first into a beam, and fell on his left knee. In his deposition, plaintiff testified that the grate had been in the raised condition for at least six months before the accident.

After plaintiff got up, he touched the side of his face and realized his ear had been very badly injured. Plaintiff testified that his ear was caught by his hard hat or the beam. Plaintiff reported he had been injured. An ambulance was called, and plaintiff was taken to a hospital. Plaintiff later had surgery to remove his ear, and a prosthetic ear was attached. Plaintiff had physical therapy for his

A-0335-17T2

neck and knees. He was also treated for depression. Plaintiff asserted a workers' compensation claim and was awarded benefits. Eventually, plaintiff returned to work at IMTT as a security guard. He testified that he could not return to his previous position as a bulk oil dock operator because his prosthetic ear could be lost or damaged if struck by debris, dirt, or oil.

In May 2015, plaintiff filed a complaint against defendants BI, BT, and EJRR, seeking damages for the injuries he sustained in the workplace accident.[1] He claimed defendants negligently maintained the pier, and his injury was caused by their negligence. Thereafter, BI, BT, and EJRR filed answers to the complaint, in which they denied liability.

In June 2017, BI, BT, and EJRR filed motions for summary judgment. Plaintiff opposed the motions and filed a cross-motion to strike BI, EJRR, and BT's answers because these defendants had asserted IMTT was the proper name for BT.

In July 2017, the Law Division judge heard argument on the motions and placed his decisions on the record. The judge granted EJRR's motion for summary judgment because plaintiff did not oppose that motion. The judge also

---

[1] Plaintiff also named Lehigh Marine, LLC as a defendant. The claim was later dismissed pursuant to Rule 1:13-7 for lack of prosecution.

A-0335-17T2

granted BT's motion because BT had merged into BI.  The judge then decided that BI was entitled to summary judgment.

The judge noted that he was bound by this court's decisions in <u>McBride v. Port Authority of New York & New Jersey</u>, 295 N.J. Super. 521, 525-27 (App. Div. 1996), and <u>Geringer v. Hartz Mountain Development Corp.</u>, 388 N.J. Super. 392, 400-02 (App. Div. 2006).  Those cases hold that a commercial landlord cannot be liable for injuries to the employee of a tenant resulting from a dangerous condition on the premises when the tenant has exclusive possession of the premises and the lease gives the tenant sole responsibility for maintenance and repair.

The judge determined that, in light of his decision to grant BI's motion for summary judgment, plaintiff's motion to strike the pleadings was moot.  The judge memorialized his decisions in orders dated July 21, 2017.

In August 2017, plaintiff filed a timely motion for reconsideration.  On September 5, 2017, the judge heard oral argument and placed his decision on the record.  The judge found no basis to reconsider his earlier order granting summary judgment to BI.  The judge entered an order dated September 5, 2017, denying the motion.  This appeal followed.

6

II.

On appeal, plaintiff argues that the motion judge erred by finding that BI did not owe him a duty of care with regard to the alleged dangerous condition at the Bayonne Terminal. In support of his argument, plaintiff cites Monaco v. Hartz Mountain Corp., 178 N.J. 401 (2004), and contends the judge erred by relying upon our decisions in Geringer and McBride in granting summary judgment to BI.

When reviewing an order granting a motion for summary judgment, we apply the same standard that governs the trial court. Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016); Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016)). Rule 4:46-2(c) provides that the court shall grant summary judgment when the evidence before the court, reviewed in a light favorable to the non-moving party, shows "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

To state a cause of action for negligence under New Jersey common law, "a plaintiff must prove four core elements: '(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages[.]'" Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 400 (2009) (alterations in original) (quoting

Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)). The threshold inquiry of whether the defendant owed the plaintiff a duty of care is generally a matter of law. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996) (quoting Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991)).

In Geringer, we noted that in McBride "we held that 'there is no landlord liability' for personal injuries suffered by a commercial tenant's employee on the leased premises 'due to a lack of proper maintenance or repair, when the lease unquestionably places responsibility for such maintenance or repair solely upon the tenant.'" Geringer, 388 N.J. Super. at 401 (quoting McBride, 295 N.J. Super. at 522). Here, BI established that it leased the premises where plaintiff was injured to IMTT, and under the lease, IMTT had sole responsibility to maintain and repair the leased premises.

Plaintiff argues, however, that McBride and Geringer are inconsistent with Monaco. In that case, the Court noted that a commercial landlord owes a duty to business invitees to:

> exercise reasonable care for [the] invitee's safety. That [duty] includes making reasonable inspections of its property and taking such steps as are necessary to correct or give warning of hazardous conditions or defects actually known to the landowner. The landowner is liable to an invitee for failing to correct or warn of defects that, by the exercise of reasonable care, should have been discovered.

[Monaco, 178 N.J. at 414-15 (citation omitted) (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993)).]

In Monaco, a traffic sign situated on the abutting sidewalk of a commercial property became dislodged, and the plaintiff was injured. Id. at 404. We held that the property owner did not have a legal duty to the invitee because the municipality owned and installed the traffic sign. Id. at 411. The Supreme Court found, however, that the property owner owed a duty to the plaintiff "to maintain . . . safe premises, including areas of ingress and egress[,]" and this included the duty to inspect "and give warning of [the] dangerous condition." Id. at 413.

The Court noted that the property owner had leased the premises to the plaintiff's employer. Ibid. The plaintiff was injured on the property when the sign became dislodged from the sidewalk the property owner had installed and maintained. Id. at 413-14. The Court observed that the sign had been installed to advance the interests of the property owner and its tenants, and under the municipal ordinance, the landowner had responsibility for the sidewalk where the sign was placed. Id. at 414.

Monaco does not, however, address the precise issue presented in this case, which is whether a commercial landlord has a duty of care to invitees of

9

its tenant, when the lease agreement between the landlord and tenant places sole responsibility for ordinary maintenance and repair of the premises upon the tenant. As the motion judge recognized, that issue was specifically addressed in McBride and Geringer.

Plaintiff also contends that McBride and Geringer are inconsistent with Hopkins, 132 N.J. at 434, 441, and Mayer v. Fairlawn Jewish Center, 38 N.J. 549, 555 (1962), which held that in certain circumstances, a commercial landowner owes a non-delegable duty of care to its business invitees. However, the facts in these cases are distinguishable from the facts in this case. In Hopkins, the property owner did not relinquish exclusive possession of the premises to the real estate broker, and therefore owed a duty of care to prospective buyers. Hopkins, 132 N.J. at 431-32.

In Mayer, the Court held that even though the defendant hired a contractor to perform repairs and the agreement provided that the contractor was responsible for any injuries arising from the work, the defendant had a duty to exercise reasonable care for the safety of persons using the property. Mayer, 38 N.J. at 555-56. However, the defendant in Mayer had not transferred exclusive control of the property to the contractor, as occurred in this case. See ibid.

We therefore reject plaintiff's contention that <u>McBride</u> and <u>Geringer</u> are inconsistent with principles of law enunciated by our Supreme Court. The trial court did not err by relying upon <u>McBride</u> and <u>Geringer</u> in deciding that BI was entitled to summary judgment.

III.

Plaintiff further argues that the trial court should not have granted summary judgment in favor of BI even if <u>McBride</u> and <u>Geringer</u> set forth the correct rule to be applied in this case. Plaintiff contends BI failed to present "conclusive evidence" that IMTT had exclusive possession of the demised premises. Plaintiff asserts that the Bayonne Terminal is a "multi-employer" facility. He also asserts that BI claimed a possessory interest in, and conducted business at, the location.

Plaintiff's argument that BI did not establish IMTT's exclusive possession of the accident site is meritless. It is undisputed that plaintiff was injured on a pier at Bayonne Terminal. As noted previously, the 1983 lease between BI, BT, and IMTT, states that the leased premises is for the "bulk liquid storage terminal[,]" which included "all improvements thereon, tanks, lines, machinery, equipment, docks, and appurtenances of all kind pertaining thereto[,]" but does

11

not include the assets of EJRR.  Under the lease, IMTT had exclusive possession of the portion of the terminal where the accident occurred.

Moreover, the record does not support plaintiff's contention that BI had a continuing duty to maintain the subject pier because the terminal is a "multi-employer" facility.  The record shows that the accident site was not included in the portion of the premises leased to EJRR, BPH, or CT.  There also is no evidence that BI or BT maintained a possessory interest in the pier, or had knowledge of the alleged dangerous condition.  Plaintiff's supervisor testified that he did not notice the raised grate until plaintiff's accident.

Therefore, the Law Division judge correctly determined there was no genuine issue of material fact with regard to whether IMTT had exclusive possession of the subject property and the sole responsibility to maintain and repair the premises where plaintiff sustained his injuries.  The judge correctly determined that McBride and Geringer applied and precluded imposition of liability upon BI.

IV.

Plaintiff also argues that the trial court erred by granting summary judgment based on a thirty-five-year old lease between BI and IMTT, which was renewed in 1988.  Plaintiff further argues that the terms of the 1988 renewal are

12

in conflict with the 1986 lease between BI, IMTT, and CT. Plaintiff contends the 2003 amendment to the lease further complicates the matter.

According to plaintiff, these various documents fail to establish a "clear tenancy and exclusive" right to possession as was the case in McBride and Geringer. This argument lacks sufficient merit to warrant extended discussion. R. 2:11-3(e)(1)(E). We note, however, that the relevant provisions of the 1983 lease give IMTT exclusive possession of the pier where plaintiff was injured, and sole responsibility for its maintenance and repair. The lease was renewed in 1988, and continued on a month-to-month basis after the date it expired on December 31, 1993.

Plaintiff further argues that the subject lease violates the Statute of Frauds. Plaintiff contends that under N.J.S.A. 25:1-1 (repealed 1996), an oral lease of real property that extends beyond three years is unenforceable in law or equity. Here, plaintiff is not a party to the lease agreement, and therefore cannot raise the Statute of Frauds as a bar to its enforcement. See Restatement (Second) of Contracts § 144 (Am. Law Inst. 1981); see also 4 Corbin on Contracts § 12.14 (rev. ed. 1997).

In any event, there is no merit to plaintiff's contention that the agreement is unenforceable. As noted, the original lease was in writing, and IMTT

remained in possession after the specified lease term. When a tenant whose original term was for one month or longer holds over, the landlord's acceptance of rent creates a month-to-month tenancy, in the absence of an agreement to the contrary. N.J.S.A. 46:8-10; see also S.D.G. v. Inventory Control Co., 178 N.J. Super. 411, 414 (App. Div. 1981).

In addition, the resulting month-to-month tenancy will generally be on "the same terms [and conditions] as the original lease." Heyman v. Bishop, 15 N.J. Super. 266, 269 (App. Div. 1951) (quoting Trust Co. of N.J. v. Doherty, 117 N.J.L. 433, 435 (E. & A. 1937)). Thus, in this case, the record shows that IMTT had an enforceable month-to-month tenancy of the premises where plaintiff was injured.

Plaintiff further argues that McBride and Geringer are inconsistent with principles of public policy. In support of this contention, plaintiff relies upon Lyon v. Barrett, 89 N.J. 294 (1982), in which the Court stated:

> Good reason exists for preserving the right of an injured worker to sue a third person to the maximum extent that such actions are consistent with workers' compensation laws. The fixed dollar ceiling on benefits under the workers' compensation laws are the result of a trade-off of certain liability of the employer for reduced awards for the employee. Injured workers are entitled not only to recovery against employers under workers' compensation laws, but also against third parties under tort law.

14

[Id. at 305 (citing 2A Larson, Workmen's Compensation Law, § 72.50 (1976)).]

The issue presented in Lyon was "whether an employee who has recovered a workers' compensation award against a corporate employer may maintain such a negligence action for the same injuries against the individual who is the sole shareholder of the corporation." Id. at 298. Therefore, plaintiff's reliance upon Lyon is misplaced.

In any event, we are not convinced that the decisions in McBride and Geringer are inconsistent with public policy. Those cases properly held that the employee of a commercial tenant may not bring a claim against the landowner for an injury arising from a dangerous condition of property, if the commercial tenant has exclusive control of the premises and sole responsibility for maintenance and repair.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0335-17T2