843 A.2d 1110

DANIEL SCULLY, PLAINTIFF–RESPONDENT, v. WILLIAM FITZGERALD, DEFENDANT–APPELLANT.

Argued November 5, 2003—Decided March 24, 2004.

116

*Anthony P. Pasquarelli,* argued the cause for appellant (*Sweet, Pasquarelli & Wiebalk,* attorneys).

*Michael R. Scully,* argued the cause for respondent.

Justice ALBIN delivered the opinion of the Court.

A landlord has a duty to keep areas within his control in a reasonably safe condition so as not to endanger the lives or property of his tenants. In this case, plaintiff, a commercial tenant, claims that defendant, his landlord, breached that duty because of the dangerous manner in which he maintained an open storage area with construction debris and refuse and because he should have been aware that tenants discarded cigarette butts in direct proximity to those flammable materials, creating a substantial fire hazard. Plaintiff contends that defendant's negligence

was the proximate cause of a fire that destroyed his business property. The trial court dismissed plaintiff's complaint on summary judgment. The Appellate Division reversed. We agree that summary judgment should not have been entered in this case.

I.

In deciding whether a grant of summary judgment in favor of defendant is appropriate, we must view the evidence in the light most favorable to plaintiff's claim. *R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146, 156 (1995). Therefore, we present the facts from plaintiff's perspective.[1]

Since 1988, plaintiff Daniel Scully operated a travel agency from a storefront that he leased in a one-story commercial building on Union Boulevard in Totowa. Attached to the back portion of that commercial structure was a two-story building that housed two apartments, one on each floor. In the rear of the first-floor apartment was a storage area over which hung a deck that extended from the second-floor apartment. Defendant William Fitzgerald owned both buildings.

On July 18, 1999, in the midst of a heat wave in which temperatures hovered between 90 and 100 degrees, a fire that started in the storage area spread and destroyed most of the apartment building. The attached commercial building was significantly damaged by smoke and water that was used by firefighters to extinguish the blaze. Plaintiff suffered a total loss of the office property in his leased premises, including furniture, computers, copy machines, and records, and was forced to relocate his business.

In the area where the fire started, defendant stored a gas engine lawn mower, a gas engine snow blower, gasoline, mulch, old papers and other refuse that had accumulated over time, construc-

---

[1] The record in this case consists of interrogatory answers, investigation and expert reports, the deposition transcript of the Totowa fire chief, and plaintiff's certification.

tion debris, and garbage that was both in and out of trash cans. The storage area was not enclosed and was freely accessible to others. The second-floor tenants regularly smoked cigarettes on the deck above the storage area and discarded the butts in such a way that they landed in and near the storage area. Fire officials investigating the blaze found butts in that general area.

Allen Del Vecchio, the Chief of the Totowa Fire Department, investigated the fire and determined that it originated in the storage area. Although Chief Del Vecchio testified at deposition that he could not pinpoint the exact cause of the fire, he was able to eliminate several potential sources such as the building's air conditioning units, the lawn mower and snow blower, the electrical outlets and lights, and the mulch. Chief Del Vecchio stated that his best guess was that the fire started accidentally when a lit cigarette or match ignited loose debris in the storage area.

James C. Alvine, plaintiff's fire expert, concluded that the storage of construction materials, equipment containing gasoline, and various other combustibles in the "open and unsecured" storage area "created a hazardous condition to the building and its tenants." Alvine found that the condition of the storage area posed an "unreasonable risk of fire" that "could have been avoided or greatly reduced by properly securing the area and/or prohibiting smoking in the area." In his opinion, the failure to take those remedial steps was the proximate cause of the fire. A defense investigator, Brian Canova, also undertook an examination of the cause and origin of the fire. Canova concluded that "based on the physical evidence," the fire originated in the storage area and "the most probable cause of the fire [was] related to a human act."

Plaintiff alleged in a two-count civil complaint that he suffered loss of property and income as a result of defendant's negligent maintenance of the Union Boulevard property. Plaintiff also claimed that the loss of the use of the premises was a breach of the lease agreement.[2] Defendant moved for summary judgment

---

[2] Because plaintiff's breach-of-lease claim played no role in the decisions below, we do not address that claim here.

on the ground that plaintiff failed to offer any proof that defendant negligently maintained the storage area.

The trial court granted defendant's motion on the basis that plaintiff failed to produce evidence to show that defendant violated a duty that was the proximate cause of plaintiff's damages. Plaintiff's expert did not identify a standard of care by reference to a building or fire code and, as a consequence, the court classified his conclusions as a net opinion. The court suggested that plaintiff could not prove his claim without identifying a code or engineering standard that was violated by the landlord, reasoning that "[w]e are all vulnerable to people walking along next to our property, flipping cigarettes on to our property," and that such circumstances "do[ ] not necessarily establish liability on the part of the landowner." Accordingly, the court concluded that plaintiff had not proven that defendant owed him a duty.

The Appellate Division, in an unpublished opinion, reversed the trial court's grant of summary judgment. The appellate panel stated that plaintiff was entitled to show that defendant had acted unreasonably in maintaining the storage area in light of defendant's knowledge that his tenants discarded cigarettes that threatened to ignite flammable materials. The trial court's holding that an expert's opinion was required to establish defendant's negligence was rejected by the panel, which found that the issues in dispute fell within the common knowledge of jurors. The panel held that plaintiff did not have to show that defendant violated a code or other regulatory standard provided that he could prove the breach of a duty of care owed to plaintiff that was the proximate cause of plaintiff's loss.

We granted certification, 176 *N.J.* 429, 824 *A.*2d 158 (2003), and now affirm the Appellate Division.

## II.

A landlord has a duty to exercise reasonable care to guard against foreseeable dangers arising from use of those portions of the rental property over which the landlord retains

control. *Braitman v. Overlook Terrace Corp.*, 68 *N.J.* 368, 381, 346 *A.*2d 76, 83 (1975); *Anderson v. Sammy Redd & Assoc.*, 278 *N.J.Super.* 50, 54, 650 *A.*2d 376, 378 (App.Div.), *certif. denied*, 139 *N.J.* 441, 655 *A.*2d 444 (1995); *Ellis v. Caprice*, 96 *N.J.Super.* 539, 547, 233 *A.*2d 654, 658 (App.Div.1967); *see also Coleman v. Steinberg*, 54 *N.J.* 58, 63–64, 253 *A.*2d 167, 170 (1969) (recognizing landlords duty to use reasonable care to guard against hazards arising out of maintenance and operation of heating system); *Skupienski v. Maly*, 27 *N.J.* 240, 248, 142 *A.*2d 220, 224–25 (1958) (recognizing landlord's duty to maintain private walkway used by tenants and guests); *Dwyer v. Skyline Apartments, Inc.*, 123 *N.J.Super.* 48, 52, 301 *A.*2d 463, 465 (App.Div.), *aff'd p.c.o.b.*, 63 *N.J.* 577, 311 *A.*2d 1 (1973) (recognizing landlords duty to maintain water and heating pipes and electrical equipment under his control). That duty requires the landlord to maintain that property in a reasonably safe condition. *Michaels v. Brookchester, Inc.*, 26 *N.J.* 379, 382, 140 *A.*2d 199, 200–01 (1958); *Mayer v. Housing Auth. of Jersey City*, 84 *N.J.Super.* 411, 417, 202 *A.*2d 439, 442 (App.Div.1964), *aff'd p.c.o.b.*, 44 *N.J.* 567, 210 *A.*2d 617 (1965).

We have found that a residential landlord has a legal duty to take reasonable security measures for tenant protection on the premises. *Trentacost v. Brussel*, 82 *N.J.* 214, 231, 412 *A.*2d 436, 445 (1980). For example, in *Trentacost* we upheld the liability of a landlord for the criminal attack of a tenant inside an apartment building located in a high-crime neighborhood because of the landlord's failure to place a lock on the building's entrance. *Id.* at 222–23, 412 *A.*2d at 440–41. That result followed because of the "landlord's failure to provide adequate security against fore-seeable criminal conduct." *Id.* at 223, 412 *A.*2d at 441. A landlord also has a responsibility to take reasonable steps to curtail the dangerous activities of tenants of which he should be aware and that pose a hazard to the life and property of other tenants. *Williams v. Gorman*, 214 *N.J.Super.* 517, 523, 520 *A.*2d 761, 764–65 (App.Div.1986) (holding landlord's duty to protect tenant from foreseeable criminal acts of third party applies when third party is

co-tenant). The landlord's duty arises when the harm is foreseeable and the landlord has sufficient control to prevent it. *Braitman, supra,* 68 *N.J.* at 382–83, 346 *A.*2d at 83–84.

In this case, we must address the specific circumstances that would trigger a landlord's duty to protect a tenant from the start or spread of a fire caused by another tenant or a stranger. Generally, we have held that a landowner may be liable for a fire started by a third party on his property if that property was kept in an unsafe and dangerous condition and the landowner did not take reasonable precautions to prevent the start or spread of the fire. *B.W. King, Inc. v. Town of West New York,* 49 *N.J.* 318, 327, 230 *A.*2d 133, 138 (1967); *Menth v. Breeze Corp.,* 4 *N.J.* 428, 439–40, 73 *A.*2d 183, 188 (1950).

In *Menth, supra,* the defendant, a manufacturing company, maintained a shed in which it stored oil-covered burlap bags used to transport waste aluminum shavings from its factory. 4 *N.J.* at 433, 73 *A.*2d at 185. The shed caught fire and the blaze spread to an adjoining apartment house, destroying the plaintiffs' household furnishings and personal effects. *Id.* at 432–34, 73 *A.*2d at 185–86. The plaintiffs filed suit claiming that the defendant negligently stored flammable materials on its premises "without taking proper precautions to prevent their ignition and that such negligence proximately caused the loss of [their] personal property." *Id.* at 434, 73 *A.*2d at 186. No competent evidence suggested that the fire ignited by spontaneous combustion; however, the evidence did permit the conclusion that the fire was set by "the acts of third parties or strangers over whom defendant had no control." *Id.* at 437, 439, 73 *A.*2d at 187, 188. The plaintiffs presented evidence that the construction of the shed, combined with the flammable materials stored inside, would be "the very thing that would feed a possible or probable fire." *Id.* at 442–43, 73 *A.*2d at 190. Nevertheless, the trial court entered judgment in favor of the defendant at the conclusion of the plaintiffs' case. *Id.* at 434, 73 *A.*2d at 186. The Appellate Division reversed and reinstated the complaint. *Id.* at 435, 73 *A.*2d at 186.

We held that a landowner who keeps his "premises in an unsafe and dangerous condition" due to the accumulation of flammable materials will be responsible to an adjoining property owner for the damage caused by a fire set by a third person, provided the fire and its spread were reasonably foreseeable. *Id.* at 439–40, 73 *A.*2d at 188. We concluded that a jury could find "that the condition in which the defendant kept and maintained the shed in question was one from which a person of ordinary experience and intelligence would have foreseen that the result complained of might ensue, and therefore, such was the proximate cause of the destruction of plaintiffs' property . . . ." *Id.* at 443–44, 73 *A.*2d at 190. Accordingly, we held that the plaintiffs had presented a *prima facie* case of the defendant's negligence that should have been presented to the jury. *Id.* at 444, 73 *A.*2d at 190.

In *B.W. King, supra,* the defendant municipality owned piers on the Hudson River that were in an abject state of disrepair. 49 *N.J.* at 322–23, 230 *A.*2d at 135–36. The piers were covered in parts by wood debris, lumps of coal, and coal dust and held together by old and dry wood, which in some sections had rotted and decayed. *Id.* at 323, 230 *A.*2d at 136. Although the town knew that trespassers frequented the piers, it did not erect a fence to prevent access to the area or post a security guard. *Ibid.* One day a teenage boy trespassing with friends threw a lit cigarette into a coal hopper, igniting a blaze that consumed the piers and spread to the plaintiffs' adjoining property. *Ibid.* The plaintiffs filed suit alleging that the defendant breached a duty of reasonable care owed to its neighbors by failing to take adequate measures to prevent the start of the fire and its spread to adjoining properties. *Id.* at 323–24, 230 *A.*2d at 136. The plaintiffs argued that the town's negligence flowed from its derelict maintenance of the decayed piers, which were left in a dangerous and combustible condition, and its failure to exercise reasonable care to prevent the start of a fire by the foreseeable, intervening acts of trespassers. *Id.* at 326, 230 *A.*2d at 137–38.

After the jury returned a verdict in favor of the plaintiffs, the trial court granted the defendant's motion for judgment notwithstanding the verdict. The Appellate Division reversed and reinstated the verdict. We then vacated the verdict and remanded for a new trial. *Id.* at 322, 230 *A.*2d at 135.

As in *Menth,* we noted that a landowner ordinarily is not liable for a fire started by a trespasser in the absence of the landowner's negligence. *Id.* at 327, 329, 230 *A.*2d at 138, 139. We described the type of unsafe and dangerous condition that would give rise to a landowner's negligence as

an unusually hazardous situation affirmatively created or maintained by the owner which gives rise to an extraordinary and undue risk of combustibility. . . .

Generally, [such a condition] would arise from the type of use to which the building is put and either the resulting accumulation of flammable material therein or the increase of the flammability of the structure itself, from the use to which it was put. [*Id.* at 328, 230 *A.*2d at 138–39.]

In remanding for a new trial, we directed that the fact-finder consider, among other factors, whether the flammability of the pier was increased by the accumulation of coal by-products, whether a reasonably prudent person would have taken steps to remove flammable material from the piers, and whether the police had notice of the presence of trespassers. *Id.* at 329, 230 *A.*2d at 139.

*Menth* and *B.W. King* stand for the simple proposition that a landowner will be liable if he maintains his property in the condition of a tinderbox and takes inadequate precautions to guard against the risk of fire when it is reasonably foreseeable that an errant spark from a trespasser's or stranger's discarded match or cigarette will ignite a blaze that will spread and engulf neighboring properties. In those cases, the unsafe and dangerous condition of the property gave rise to the foreseeable threat of fire.

In looking to the source of the general duties that are owed by a landlord to a tenant and the duty of landowners to protect against the foreseeable dangers of fire, we find the roots of traditional principles of negligence law. The test of negligence is

" 'whether the reasonably prudent person at the time and place should recognize and foresee an unusual risk or likelihood of harm or danger to others.' " *Trentacost, supra,* 82 *N.J.* at 222, 412 *A.*2d at 440 (quoting *Rappaport v. Nichols,* 31 *N.J.* 188, 201, 156 *A.*2d 1, 8 (1959)). Under that test, our analysis in this case must focus on whether the storage of items on defendant's property, in view of the surrounding circumstances, "was one from which a person of ordinary experience and intelligence would have foreseen that the result complained of might ensue and, therefore, such was the proximate cause of the destruction of plaintiff['s] property ...." *Menth, supra,* 4 *N.J.* at 444, 73 *A.*2d at 190.

Defendant argues that the materials stored on his property were not the equivalent of the inherently dangerous materials stored or maintained by the defendants in *Menth* and *B.W. King.* It may be true that the materials in those cases were qualitatively different and more highly combustible than the uncontained trash and debris in defendant's storage area. Nonetheless, defendant's exposed collection of papers and refuse were flammable and, therefore, potentially dangerous. Unlike *Menth* and *B.W. King,* here there was a heightened risk that a fire might be ignited accidentally because tenants routinely discarded cigarettes within the immediate vicinity of the flammable materials. The ultimate danger that a fire would start from a smoldering cigarette tossed among old papers, garbage, and construction debris was as foreseeable as the spark that set in motion the conflagration in *Menth.* Had the landlord conducted a reasonable inspection of his property, he would have found cigarette butts in and about the storage area. Had the landlord taken the simple expedient of placing the debris in a trash bin or dumpster, he would have minimized or eliminated the risk of fire of which he should have been aware in light of his tenants' smoking habits.

We hold that in the circumstances of this case defendant owed to plaintiff, his tenant, a common law duty to maintain his storage area in a reasonably safe condition, and to exercise reasonable care to guard against the risks associated with the start or spread

of a fire by the negligent or intentional act of a third party, such as a tenant. See *Ross v. Broitman*, 338 *Mass.* 770, 772–73, 157 *N.E.*2d 532 (1959) (affirming liability verdict against landlord for death of tenant as result of foreseeable apartment building fire caused or intensified by large accumulation of paper and cardboard kept in common hallway under landlord's control). Imposing this duty on defendant is consistent with our jurisprudence and appropriate given the evidence we must accept as true at this juncture of the case.

### III.

Defendant argues that the existence of a duty must be established by expert testimony identifying a statutory or regulatory standard of care. We agree with the Appellate Division in holding that plaintiff is not required to identify a fire or building code or other statutory standard to establish a duty that defendant owed to plaintiff. As we said in *Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 283, 445 *A.*2d 1141, 1147 (1982):

> There is no general rule or policy requiring expert testimony as to the standard of care.... The test of need for expert testimony is whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable.

Certain dangerous conditions that create the foreseeable risk of fire are well known to ordinary people and are a matter of common knowledge. *Ellis v. Caprice, supra*, 96 *N.J.Super.* at 548, 233 *A.*2d at 658–59. A jury does not need a fire expert to explain to it the dangers that might follow when a lit cigarette is thrown into a pile of papers or other flammable material. The duty involved in this case was not of an esoteric nature. Storage of a gas engine lawn mower and a gas engine snow blower, as well as mulch, assorted construction debris, old papers, and garbage outside of trash cans in an open storage area where cigarettes were discarded regularly may be found to be a breach of a landlord's duty to exercise reasonable care to guard against the risk of fire. It is within the province of the jury ultimately to determine whether defendant breached that duty.

In certain cases, a jury may be assisted by expert testimony in deciding issues related to causation. *Butler, supra,* 89 *N.J.* at 283, 445 *A.*2d at 1147 ("[T]he test of admissibility is ... whether the witnesses offered as experts have peculiar knowledge or experience not common to the world which renders their opinions founded on such knowledge or experience any aid to the court or jury in determining the question at issue.") (internal quotation marks and citations omitted).

Defendant also argues that the Appellate Division erred by relying on the fire chief's opinion that a cigarette started the fire because that opinion was not based on a reasonable certainty. We agree. The fire chief was able to trace the origin of the fire to the storage area. He ruled out as potential causes the air conditioning units, lawn mower, snow blower, outside electrical light, electrical outlet, and mulch. He also ruled out arson or other foul play. When asked at deposition to give the most probable cause of the fire, the fire chief answered that, as a result of his investigation, his "best guess" was that a discarded cigarette ignited the fire.[3] A competent opinion addressing the cause of a fire must be framed in terms of probability or a reasonable degree of certainty. *See generally,* Jay M. Zitter, Annotation, *Admissibility of Expert and Opinion Evidence as to Cause or Origin of Fire–Modern Civil Cases,* 84 *A.L.R.* 5th 69 (2000) (observing that courts have admitted expert evidence regarding cause of fire where "the expert talked about probabilities and not just possibilities"). The fire chief's opinion is inadmissible because it was founded on a mere possibility that a discarded cigarette or match started the fire accidentally.

Even without the fire chief's testimony, however, plaintiff submitted sufficient evidence to establish a *prima facie* case of defendant's negligence. Plaintiff's expert, a fire investigator with

---

[3] It stands to reason that "when smoking causes a fire it is highly likely that the offending cigarette butt or ash will dissolve in the ensuing conflagration." *Gichner v. Antonio Troiano Tile & Marble Co.,* 410 *F.*2d 238, 247 (D.C.Cir.1969).

twenty-seven years experience and extensive training and education in the fields of fire and arson investigation, reviewed the answers to interrogatories, the fire investigation report, the fire chief's deposition testimony, and defendant's expert report. Based on that information, plaintiff's expert concluded in a report that the fire "originated in an open and unsecured patio area located beneath a second floor landing ... [and] was in all *probability* due to the careless discarding of an ignited object, mainly the disposal of either a cigarette or match."

Defendant erroneously claims that plaintiff's expert report expressed a "net opinion." *N.J.R.E.* 703 requires that an expert opinion be supported by facts or data either in the record or of a type usually relied on by experts in the field. The net opinion rule reflects the well-established notion "that an expert's bare conclusions, unsupported by factual evidence, [are] inadmissible." *Buckelew v. Grossbard,* 87 *N.J.* 512, 524, 435 *A.*2d 1150, 1156 (1981). In this case, Alvine explained that the probable cause of the fire was the combustible combination of a lit cigarette coming into contact with flammable material in the storage area.

Alvine has sufficient specialized knowledge and experience in fire investigation and prevention to render an opinion as to the probable cause of the fire. His report does not express a net opinion because it was supported by facts contained in the reports of the other fire investigators, the answers to interrogatories and the deposition testimony of Chief Del Vecchio. Moreover, the fire investigator retained by defendant's insurance company also concluded, "[b]ased on the physical evidence as well as the facts developed through investigation [that] the fire originated on the exterior of the dwelling in the vicinity of the storage under the shed roof," and further opined that "[t]he most probable cause of the fire is related to a human act." The record permits the drawing of a reasonable inference that the "human act" was the careless disposal of a cigarette.

## IV.

Viewing the evidence contained in the reports of the defendant's and plaintiff's experts in the light most favorable to plaintiff, we find that a jury could conclude that a careless tenant flicking a cigarette or match into the storage area started the fire. We do not suggest that a jury will reach that conclusion, or that it will find that defendant maintained the storage area in a dangerous condition or that his negligence caused the start or spread of the fire that damaged plaintiff's property. It is for the jury to determine what evidence is credible, what inferences are to be drawn from the evidence, whether defendant breached a duty owed to plaintiff, and last, whether that breach was a proximate cause of the injury suffered by plaintiff. The trial court erred in denying the jury the opportunity to decide those issues.

We affirm the decision of the Appellate Division, and remand for further proceedings consistent with this opinion.

Justice VERNIERO, concurring.

I join in the Court's opinion based on its precise statement of facts, which we are required at this juncture to view in a light most favorable to plaintiff. As a general proposition, there is nothing especially hazardous about mulch and other debris, or a lawnmower and snow blower being stored underneath an outdoor deck. I venture to say that a vast number of landowners maintain similar items on properties throughout New Jersey. Standing alone, such everyday conditions should not expose property owners to liability, and I see nothing in the Court's opinion to suggest otherwise.

What makes this case appropriate for jury review is the condition of the landlord's property, *coupled with* plaintiff's colorable claim concerning the hazards posed by the continual discarding of cigarette butts on the property itself. I would conclude differently if only a few errant butts were found in the area or if the landlord had no reasonable means of being aware that the butts were present at all. I adhere to my view that "[f]airness would

require that in certain circumstances a commercial landowner should be free of legal responsibility, such as when a defective [or hazardous] condition is far removed from that party's control." *Monaco v. Hartz Mountain Corp.*, 178 *N.J.* 401, 421, 840 *A.*2d 822, 835 (2004) (Verniero, J., concurring). That is not this case for the reasons expressed in the Court's carefully-drawn opinion.

Justice LaVECCHIA joins in this opinion.

*For affirming and remanding*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Concurring*—Justices VERNIERO and LaVECCHIA.