SUMNERS, J.A.D.
*925 *177 The trial court granted summary judgment to defendants R & M Tagliareni, LLC and Robert & Maria Tagliareni, II, LLC, landlord and property manager, respectively, of a multi-family apartment building, determining that they did not owe a duty of care to plaintiff J.H. (Jimmy), who at the time was an infant staying in one of defendants' apartments with the tenant's consent, *178 to protect him from the apartment's excessively-hot-uncovered radiator. We conclude that, under the circumstances of this case, the radiator was part of the building's heating system that defendants have control of under common law and N.J.A.C. 5:10-14.3(d), and should have been covered. We therefore reverse.
Jimmy, an infant by his guardian ad litem, A.R., and A.R., individually, appeal the summary judgment dismissal of their personal injury complaint. The action arose from the permanent scarring Jimmy received as an infant when he was tragically burned from an uncovered iron radiator in an apartment of a multi-dwelling building owned and managed by defendants. The motion judge determined defendants could not be held liable because they did not control the radiator and therefore owed no duty of care to Jimmy. Because we conclude that, under common law and N.J.A.C. 5:10-14.3(d), the radiator was part of the apartment's heating system subject to defendants' control, we reverse to allow a jury to determine whether defendants breached their duty owed to Jimmy, and if so, whether plaintiffs are entitled to damages.
I
In reviewing a ruling on a summary judgment motion, we do so de novo under the same Brill [2] standard applied by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59, 110 A.3d 52 (2015). Thus, we consider, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406, 98 A.3d 1173 (2014) (citation omitted). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.' "
*179 DepoLink Court Reporting & Litig. Servs. v. Rochman, 430 N.J. Super. 325, 333, 64 A.3d 579 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478, 64 A.3d 536 (2013) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512-13, 984 A.2d 872 (2009) ).
When the accident occurred, Jimmy was about nine months old, under the care of his father J.H., Sr. (James) and his step-mother V.H. (Vera), staying in an apartment rented by L.C. (Linda), Vera's sister. At some point in the early morning hours, Jimmy had awakened while sleeping in a car seat, so his father took him to the bedroom and placed him in a bed to sleep with his ten-year-old step-sister, after swaddling him in blankets to prevent him from falling off the bed. The bed was adjacent to a steam-heated iron radiator. The next morning, Jimmy's step-sister discovered Jimmy lying on the floor with his head pressed against the hot radiator. After being freed, Jimmy was rushed to the *926 hospital where it was determined he had third-degree burns over three percent of his body surface-head, right cheek and left arm.[3] At the time of the motion, over five years later, the burns had resulted in permanent scarring.
Due to the seriousness of Jimmy's injury, the Hudson County Prosecutor's Office's (HCPO) investigated. Their investigation revealed that the steam heat flowing into the radiator was turned on and off from a shut-off valve at its base, and that within approximately two minutes of opening the valve, the cool radiator became so hot that it was unbearable to touch. The heat flowing to the radiator could only be manually turned on or off at the shut-off valve; there was no thermostat control in the apartment or *180 bedroom to stop or regulate the heat into the radiator when the room reached a set temperature.
Jimmy's mother, A.R., filed suit against defendants alleging their negligence was responsible for his injuries. In turn, a third-party complaint was filed against James, Vera and Linda contending they were in control of the apartment's heating system and failed to protect Jimmy. During the ensuing discovery, the apartment building's superintendent testified at deposition that the boiler, which supplies heat to the apartments' radiators, was located in a locked room in the building's basement under defendants' exclusive control and was not accessible by the tenants. He noted that some tenants had covers on their radiators when he started working in the building fifteen years ago. Robert Tagliareni, a stakeholder in both R & M Tagliareni, LLC and Robert & Maria Tagliareni, II, LLC, stated in his deposition that defendants did not provide covers for the apartments' radiators nor were they ever asked to do so. An inspector with the Department of Community Affairs (DCA) testified the apartment building's radiators were not in violation of any state law; he was never trained that N.J.A.C. 5:10-14.3(d), which governs heating systems in multi-family dwellings, required radiators be protected with covers.
Following discovery, defendants were granted summary judgment dismissing all claims against them based upon their argument that they could not be held liable for Jimmy's injuries because they owed him no duty under common law or state regulation governing multi-family dwellings to cover the apartment's radiator that caused his burns. The judge denied plaintiffs' motion for reconsideration finding there was no demonstration that the grant of summary judgment was based upon a palpably incorrect or irrational grounds or did not appreciate the significance of probative, competent evidence. Palombi v. Palombi, 414 N.J. Super. 274, 288, 997 A.2d 1139 (App. Div. 2010).
II
To sustain a negligence action, a plaintiff must prove there was a duty of care that was breached, which was the proximate *181 cause of injury. D'Alessandro v. Hartzel, 422 N.J. Super. 575, 579, 29 A.3d 1112 (App. Div. 2011). In granting defendants' summary judgment, the motion judge rejected plaintiffs' argument that defendants had a duty of care under *927 common law and N.J.A.C. 5:10-14.3(d), to ensure that the radiator could be operated in a safe manner, and to cover it in order to protect tenants and their guests from its heat.
In her common law analysis, the judge's oral opinion provided that "defendants[ ] did not have either actual or constructive notice of the condition[, of the extremely hot radiator,] that caused [Jimmy's] injury, and as such, do not owe ... a common law duty of care to [Jimmy]." In citing defendants' arguments, it appears the judge relied upon their assertions that there were no complaints about the radiator getting too hot; that the radiator was not cited for any code violation by state inspectors; that the radiator heat was controlled by the apartment occupants through the shut-off valve; and that they were not aware that children were staying in Linda's apartment. The judge added that Jimmy was not a tenant, and that the shut-off valve to the radiator's heat was controllable by the tenants. Consequently, the judge did not reach the issue of whether there were superceding causes of Jimmy's injury. We disagree with these legal conclusions.
It is well-settled that a landlord has a common law duty to exercise reasonable care to keep the premises in a reasonably safe condition to guard against foreseeable dangers arising from the use of the premises. Scully v. Fitzgerald, 179 N.J. 114, 118, 843 A.2d 1110 (2004) ; Coleman v. Steinberg, 54 N.J. 58, 63, 253 A.2d 167 (1969). Foreseeability of an unreasonable risk of harm to the reasonable person is the crucial factor in determining whether a duty exists. Trentacost v. Brussel, 82 N.J. 214, 223, 412 A.2d 436 (1980). Hence, a landlord's duty arises when foreseeable harm exists that falls within the landlord's control. Scully, 179 N.J. at 123, 843 A.2d 1110. Our courts have thus recognized numerous circumstances where a duty to exercise reasonable care exists to prevent foreseeable danger. See, e.g., id. at 126-27, 843 A.2d 1110 *182 (ruling there is a duty to guard against the risk of fire); Trentacost, 82 N.J. at 223, 412 A.2d 436 (recognizing a duty to ensure "adequate security against foreseeable criminal conduct"); Anderson v. Sammy Redd & Assocs., 278 N.J. Super. 50, 55, 650 A.2d 376 (App. Div. 1994) (acknowledging a duty to properly install and maintain window screens). A landlord's duty of care to protect a tenant extends to people who are in the premises with the tenant's consent. See Faber v. Creswick, 31 N.J. 234, 238-42, 156 A.2d 252 (1959) (concluding that a landlord may be liable for personal injuries sustained by the tenant or anyone entering the leased premises under the tenant's right when the injuries were caused by the landlord's breach of a duty to repair); Anderson, 278 N.J. Super. at 54, 650 A.2d 376 (providing that the landlord's duty of care in making a repair to the rented apartment extends to "tenants and their guests"). While the existence of a duty is a question of law to be determined by the court, whether the landlord breached that duty and created an unreasonable and foreseeable risk of harm to the plaintiff is a question for a jury. See Anderson, 278 N.J. Super. at 54-55, 650 A.2d 376 (recognizing that it is the jury's province to decide whether the landlord's duty of installing a screen, which did not properly fit the window frame, created an unreasonable and foreseeable risk of harm to a small child's climbing instinct and curiosity).
In this case, to determine if defendants had a duty of care to Linda and her guests under common law regarding the apartment building's heating system turns on whether defendants had control over the radiator's heat. To guide our analysis, we find instructive the Court's long-standing ruling in Coleman. There, an approximately *928 one-year-old plaintiff suffered second- and third-degree burns on his lower leg when he crawled away from his mother and got his leg caught in between a wall and an uncovered hot up-pipe, which through another pipe was connected to the radiator. Coleman, 54 N.J. at 60-62, 253 A.2d 167. The infant plaintiff lived with his parents in the first-floor apartment of a two-family house in which the defendant landlords furnished heat *183 through a single furnace in the basement. Id. at 61, 253 A.2d 167. A thermostat in the plaintiff's apartment controlled the radiators' heat temperature in both apartments. Ibid. However, a shut-off valve on each radiator after the up-pipe could stop the flow of hot water into the radiator but not the up-pipe. Ibid. At trial, the court dismissed the plaintiff's complaint upon the close of the plaintiff's proofs on the basis that there was no legal duty owed by the landlords to the plaintiff. Id. at 62, 253 A.2d 167. In affirming our court's reversal of the trial court's dismissal, the Court held:
that since the landlords supplied heat to both tenants of the premises through a single-control heating unit, they must be deemed to have retained control of the entire system. That system included all of the portions thereof which entered into its operation, such as the pipes leading from the furnace throughout the building and connecting with the radiators in the rented apartments. Having retained that control, the landlords were under a duty to use reasonable care to guard against hazards to members of the tenants' family, such as the infant plaintiff, arising out of the maintenance and operation of the system. Monohan v. Baime, 125 N.J.L. 280 [15 A.2d 599] (E. & A. 1940) ; Ellis v. Caprice, 96 N.J. Super. 539, 547 [233 A.2d 654] (App. Div. 1967) ; [William L.] Prosser, Law of Torts, § 63 [at] 421 ( [3d ed. 1964); 2 [Fowler V.] Harper and [Flemming] James[, Jr.], The Law of Torts, § 27.17 [at] 1518 ( [1st ed.] 1956).
[ Id. at 63-64, 253 A.2d 167.]
Given the landlord's duty of care, the Court reasoned:
Since the child was burned by the exposed up-pipe while he was crawling around the floor, the Appellate Division majority concluded, and we agree, that the jury could reasonably have found that a dangerous condition existed in the heating system, and that the defendants had failed to exercise reasonable care to guard against that clearly foreseeable kind of injury. We add that since the dangerous condition existed at the time of the letting, to the landlords' knowledge, actual or constructive, the duty to remedy came into being at the inception of the tenancy. Their liability did not depend upon receipt thereafter of further notice of the hazard in sufficient time prior to the child's injury to rectify it. The dangerous condition, if found to be such by the jury, being in existence at the time of the letting and the landlords having retained control of the heating system, they were under a continuing duty throughout the tenancy of using reasonable care to eliminate it. And, in our judgment, there can be no doubt of their right to make a reasonable entry into the tenants' apartment in order to do so.
We cannot close our eyes to the commonplace fact that pipes like those involved here can be protected by a covering or shield, and that a protective covering or shield is readily available for the unit of pipe and radiator at modest cost. Expert opinion on the subject is not required. And there is nothing in the record to suggest that furnishing such protection would be unreasonably burdensome. See [ ]
*929 Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 78, 88 [207 A.2d 314] (1965).
*184 [ Id. at 64, 253 A.2d 167.]
Although a different part of the heating system-the up-pipe-caused the plaintiff's burns in Coleman, we conclude the concept of "control" relied upon in Coleman, applies here to reason that defendants owed Jimmy, a guest in the apartment, a duty of care to protect him from the hot radiator. Coleman notes that the landlord maintained control of the up-pipe because the shut-off valve was located above the up-pipe, meaning the shut-off valve bore no effect on the temperature of the uncovered up-pipe, which burned the plaintiff. In this case, since the apartment unit lacks a thermostat, the radiator's temperature remains within defendants' control because the temperature of the heat in a tenant's apartment is regulated at the sole discretion of the defendants. For example, plaintiffs' expert reported the apartment building's boiler heats "steam at atmospheric temperature ... [of] 212 [degrees]." As a result, tenants have no access to, and in turn, no ability to adjust the temperature of the heat entering their apartment.
We believe that the shut-off valve and the lack of a thermostat in the apartment, in reality, results in an ineffective or illusory transfer of the temperature control of the heating system. The shut-off valve only allows the flow of heat to the radiator to be manually turned on or off. Meaning that when the apartment's occupants are sleeping and the heat makes the radiator extremely hot, as was the case here, someone would have to wake up and shut off the valve to prevent the hazardous condition of an unbearable-to-touch radiator. Thus, Linda and her guests had an ineffective or unrealistic way to control the apartment's heat. Similarly, their inability to control the heat emanating from the radiator through a thermostat, makes them vulnerable to the radiator's extreme heat because defendants remain in "control" of the temperature of the heat stemming from the boiler and going into the radiator. Indeed, the absence of a thermostat makes it highly impractical for an occupant to maintain control of the heat coming from the radiator. Nevertheless, as plaintiffs argue, a cover on the radiator would have guarded against burns from contact with the hot radiator. In fact, defendants were aware *185 through the building superintendent that some apartments' radiators were protected with covers. And as was the situation in Coleman, there is nothing in the record to suggest it was unreasonably burdensome for defendants to cover the radiators.
We do not agree with the motion judge's suggestion that the absence of prior injury or complaints concerning the uncovered radiator is dispositive of defendant's lack of actual or constructive notice of the dangerous condition, thereby justifying dismissal of the action. First, Coleman stated that if the jury finds there was a dangerous condition in existence at the time the apartment was leased and the landlord retains control over it, the landlord still has a duty to eliminate the condition. Thus, we agree with plaintiffs that they do not have to show defendants had actual or constructive notice of the dangerous condition where the condition was created by defendants and existed at the time the apartment was leased to Linda. Second, as was recognized in Laidlow v. Hariton Mach. Co., 170 N.J. 602, 621, 790 A.2d 884 (2002), "[s]imply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe.... It is not incumbent that a person be burned before one knows *930 not to play with fire" (quoting Cook v. Cleveland Electric Illuminating Co., 102 Ohio App.3d 417, 657 N.E.2d 356, 364 (1995) ). The absence of prior accidents is merely one of many factors that may be considered by the jury but it is not solely determinative of whether a defendant knew or should have known that a dangerous condition existed that should have been remedied. See id. at 621, 790 A.2d 884. The same can be said for the lack of any violations issued by DCA. Finally, because a landlord's duty to protect a tenant extends to his or her guests, we find it of no import that defendants were not aware that James was visiting or staying in Linda's apartment.
Based upon the circumstances here, we conclude that under common law, defendants had sufficient control over the heating system that extended a duty of care to Jimmy as a guest staying *186 in the apartment. Whether that duty was violated is within the jury's province as fact finder.
III
Plaintiffs contend defendants owed Jimmy a duty of care under N.J.A.C. 5:10-14.3(d), which provides that, an apartment building's
[h]eating system, including such parts as heating risers, ducts and hot water lines, shall be covered with an insulating material or guard to protect occupants and other persons on the premises from receiving burns due to chance contact.[4 ]
The motion judge determined that the regulation does not establish a duty of care with respect to the radiators in Linda's apartment. The judge determined that since the phrase "heating system" is immediately followed in the regulation by the phrase "including such parts as heating risers, ducts and hot water lines," and does not mention radiators, the regulation does not define radiators as part of the heating system. The judge therefore found defendants have no obligation under the regulation to cover the radiators in their apartments to protect occupants from their heat.
Because there is no prior interpretation of the regulation, we must look to the same rules of construction that apply to our interpretation of statutes. Headen v. Jersey City Bd. of Educ., 212 N.J. 437, 451, 55 A.3d 65 (2012) ; see U.S. Bank, N.A. v. Hough, 210 N.J. 187, 199, 42 A.3d 870 (2012). "It is a basic rule of statutory construction to ascribe to plain language its ordinary meaning." Bridgewater-Raritan Educ. Ass'n v. Bd. of Educ. of Bridgewater-Raritan Sch. Dist., Somerset Cty., 221 N.J. 349, 361, 113 A.3d 764 (2015) (citing *187 D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 119-20, 927 A.2d 113 (2007) ). It is a primary purpose of a court to "seek to effectuate the 'fundamental purpose for which the legislation was enacted.' " Twp. of Pennsauken v. Schad, 160 N.J. 156, 170, 733 A.2d 1159 (1999) (quoting N. J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972) ). Yet, "[w]hen all is said and done, the matter of statutory construction ... will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation." *931 Jersey City Chapter, P.O.P.A. v. Jersey City, 55 N.J. 86, 100, 259 A.2d 698 (1969). Where statutory language includes a list and does not suggest exclusivity, it may suggest the list is non-exhaustive. See Chevron U.S.A. v. Echazabal, 536 U.S. 73, 80, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002) (determining statutory language "may include" indicated non-exclusivity of list that followed); Allstate Ins. Co. v. Malec, 104 N.J. 1, 8, 514 A.2d 832 (1986) (concluding statutory language "in any of the following ways" did not imply exclusion of all other unnamed ways).
Under these guidelines, we disagree with the motion judge's narrow interpretation of the regulation. Including a radiator as part of the apartment's heating system is a logical and sensible interpretation of the regulation's fundamental purpose. The regulation clearly seeks to protect tenants and their guests from being burned from "chance contact" with parts of the heating system. We can think of no part of an apartment's heating system that individuals are more likely to be in contact with than the radiator, which is in the room to provide heat. We would not reach this conclusion if the regulation plainly stated radiators are "excluded as" or "are not" part of the heating system.
As for the deposition testimony of the DCA inspector that based upon his training he does not believe that radiators must be covered as part of N.J.A.C. 5:10-14.3(d), it bears no significance in aiding our interpretation of the regulation. His comment cannot be regarded as DCA's official position interpreting the regulation.
*188 And based upon the limited record before us, we cannot say that the lack of any state-issued violations for uncovered radiators is determinative of DCA's interpretation. Given our plain meaning interpretation of N.J.A.C. 5:10-14.3(d), we see no purpose in seeking guidance from a court outside our jurisdiction as the motion judge did in finding persuasive a New York state court decision that a radiator is not part of the heating system under their state regulation.
We therefore conclude, as a matter of law, plaintiffs can argue at trial that the regulation imposes a duty of care upon defendants to guard the radiator to prevent it from burning Jimmy, and that the duty was breached.
Lastly, while we rely upon Coleman in determining defendants had a common law duty of care towards Jimmy, we find no merit in plaintiffs' argument that Coleman also requires us to conclude that a duty of care existed under N.J.A.C. 5:10-14.3(d). Although the same regulatory language existed when the accident occurred in Coleman, the regulation was not applied because the accident happened in a two-family house that was not covered by the regulation. 54 N.J. at 64-65, 253 A.2d 167. The Court's mention of the regulation was merely to support its position that the up-pipe was part of the heating system in dwellings under the regulation's jurisdiction. We do not construe the Court's remark "that a protective covering or shield is readily available for the unit of pipe and radiator at modest cost[,]" as the Court's definitive ruling that a radiator is part of the heating system under the regulation. Id. at 64, 253 A.2d 167 (emphasis added). Given that the injury in Coleman was not caused by a radiator, coupled with the non-applicability of the regulation then in effect, we find no basis that our interpretation of N.J.A.C. 5:10-14.3(d) should be guided by the comment in Coleman, which is essentially dicta. Nonetheless, for the different reasons noted above, we conclude the regulation includes a radiator as part of the heating system under defendants' control.
*932 *189 In sum, we conclude a jury should be able to consider whether defendants breached their duty of care to Jimmy under common law and N.J.A.C. 5:10-14.3(d). Our decision does not address the merits of defendants' claims against third-party defendants.
Reversed and remanded for trial. We do not retain jurisdiction.

Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).

In A.R., 419 N.J. Super. 538, 545-46, 17 A.3d 850 (App. Div. 2011), this court reversed the trial court's order and concluded that James was guilty of abuse or neglect within the meaning of N.J.S.A. 9:6-8.21(c) due to his gross negligence in putting his infant son to sleep in a bed without railings next to an operating radiator. Prior to the trial court's order, James pled guilty to fourth-degree child abuse or neglect, N.J.S.A. 9:6-1 and -3. Id. at 542, 17 A.3d 850.

As a multi-dwelling building with more than three apartments, defendants' apartment building is subject to the Hotel and Multiple Dwelling Law, N.J.S.A 55:13A-1 to -28, and its Regulations for Maintenance of Hotels and Multiple Dwellings, N.J.A.C. 5:10-1.1 to -29.1. N.J.S.A. 55:13A-3(k). Although the same regulatory language existed when the accident occurred in Coleman, the Court did not apply the regulation because there the two-family house did not constitute a multi-family dwelling.