**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0642-23

KATINA WALKER,

    Plaintiff-Appellant,

v.

CITY OF IRVINGTON,
and STATE OF NEW JERSEY,

    Defendants,

and

SMITH SONDY ASPHALT
CONSTRUCTION COMPANY,
COUNTY OF ESSEX, RIVERVIEW
PAVING, PACIFIC CONSTRUCTION,
and STATEWIDE STRIPING,

    Defendants-Respondents.

_____

Submitted December 19, 2024 – Decided December 30, 2024

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket Nos. L-5148-19.

Schiller, Pittenger & Galvin, PC, attorneys for appellant (James R. Korn, of counsel and on the briefs).

Lewis Brisbois Bisgaard & Smith, LLP, attorneys for respondents Smith Sondy Asphalt Construction Company and County of Essex (Colin P. Hackett, of counsel and on the brief).

PER CURIAM

Plaintiff Katina Walker appeals from an August 18, 2023 order, which granted defendants Smith Sondy Asphalt Construction Company and the County of Essex summary judgment dismissal of her negligence complaint. She also challenges an October 20, 2023 order denying her motion for reconsideration. We affirm.

In July 2017, plaintiff was injured when she stepped off a curb and into the roadway at the intersection of Madison and Stuyvesant Avenues, in the City of Irvington. The county owned the roadway and had retained Smith Sondy as the general contractor to repave it. In turn, Smith Sondy hired three subcontractors to perform the milling, construction, and striping for the job.

Plaintiff sued several of the entities involved with the project. She resolved her claims against all defendants except the county and Smith Sondy. Her complaint alleged the county was negligent because it failed to maintain the "crosswalk and/or street and/or sidewalk, so as to create and/or permit a

2

dangerous condition to exist which resulted in [p]laintiff . . . stepping into a[n] uncovered and/or unprotected pothole and/or depression and/or hole . . . ." The second count alleged Smith Sondy was negligent as the "[g]eneral [c]ontractor and/or regulator and/or controller and/or supervisor for the restoration, remolding, removing and/or renovation of the property so as to create and/or permit a dangerous condition to exist," resulting in plaintiff's injury.

At her deposition, plaintiff testified she stepped down onto the roadway, into an indentation, and fell. She observed "a lot of gravel" on the ground around her.

The president of the company in charge of the milling was also deposed. He explained the milling process involves the grinding of the top layer of asphalt. The milling company then sweeps and removes the chunks of asphalt from the roadway, so it is accessible to the public. Thereafter, Smith Sondy "would come in at the end . . . of every day . . . [to] do[] all the ramping . . . so [the path from the curb to the roadway is] accessible to traveling public." The ramping process was designed to prevent the public from tripping on manholes around which the asphalt had been milled and the areas where the curb meets the milled roadway surface.

3

The president of Smith Sondy also testified at deposition. He described the resurfacing process as follows: 1) addressing the concrete work on the roadway, which in this case involved the handicap ramps; 2) milling; 3) casting, i.e.; leveling of manholes and catch basins with the roadway; and 4) paving the roadway with asphalt. If the roadway contained millings, Smith Sondy would have the milling company sweep the roadway with a street sweeper.

Plaintiff's theory of liability was that there was temporary loose asphalt left in the hole without cones or signage to warn pedestrians to enable them to safely cross the road, which caused her fall. Smith Sondy was responsible for installing temporary asphalt ramping at the base of the curbs, and plaintiff alleged the ramping did not properly extend to the curb, causing millings and stones to gather at the base of the curb.

Defendants moved for summary judgment. They argued plaintiff had not established prima facie negligence because she did not have an expert to explain to the jury the complexity of milling and repaving, the standard of care, duty, and whether there was a breach of duty. Defendants asserted a jury would speculate regarding the cause of plaintiff's fall.

Plaintiff's statement of material facts in opposition to summary judgment relied on the deposition testimony of the milling company and Smith Sondy

4

representatives. She claimed their testimony established: the paver begins paving the road within three days of the milling in order to protect the public; if there was a hazard located at the base of the curbing, Smith Sondy should have placed temporary asphalt because it was responsible for the paving; Smith Sondy was responsible to address the hazard by placing a traffic cone; "[a] depression in the roadway would be an unsafe condition[,] which can occur during the milling process"; "[i]f someone were to use a pickaxe along the base of the curb to clean it out, and then did not fill it back, that would have increased the depression"; the county should have had an inspector present on a daily basis; and if the road was milled, but not paved, Smith Sondy should have put cones and warning signs at any hazardous area. Defendants alleged these facts called for expert testimony to establish the standard of care and whether it was breached by them in plaintiff's case.

Following oral argument, the motion judge granted defendants summary judgment. He found plaintiff's case was unlike Jacobs v. Jersey Central Power & Light Co., 452 N.J. Super. 494 (App. Div. 2017). There, the defendant utility company had removed a streetlight, resulting in a hole in the ground. Id. at 497. The utility company workers placed a safety cone over the hole, which disappeared a few days later. Ibid. Two months later, the plaintiff was walking

A-0642-23

to retrieve the mail, fell into the hole, and was injured.  Ibid.  On appeal, the defendant argued, among other things, that the trial court should have granted it a directed verdict "on liability because plaintiff did not present a liability expert on utility industry standards . . . ."  Ibid.

We affirmed the trial judge's ruling to allow plaintiff to proceed without an expert, noting he "rightly left it to the jury's common sense to decide the negligence issues, based on the evidence and general principles of reasonable care."  Id. at 508.  The question for the jury was not esoteric or technical because the plaintiff "simply fell into . . . a hole in the ground, . . . which the jurors reasonably found to have been left unattended too long without durable warnings or barriers."  Ibid.

The motion judge distinguished Jacobs, because the facts here did not involve the mere removal of a utility pole leaving behind a hole, but a different

> question of what would be the standard . . . and whether the standard was breached in circumstances where you have a multi-party and somewhat[] complex road resurfacing operation that involved milling, temporary resurfacing, . . . and how those matters might be impacted by the different conditions in the . . . road at any particular point and . . . how they get addressed and what's the responsibility of the different participants . . . .

Plaintiff needed

A-0642-23

an expert to explain to a jury . . . these processes and procedures and . . . different work obligations . . . and what it was that [Smith Sondy] . . . should have been doing . . . and . . . how that . . . relates to a standard within the paving[,] . . . the concrete base to which the milling is done[,] and . . . the temporary asphalt ramping . . . that Smith[]Sondy installed to protect the drop off . . . .

An expert was necessary to explain Smith Sondy's responsibilities as a general contractor, including the responsibilities of its foreperson and safety personnel during the milling process, and whether they "should have seen that the road was no[t] ramped all the way across, placing a cone at certain spots, the depth of the drop off that would have been unacceptable and . . . [that] a [twelve] inch step off is unacceptable . . . ." Expert testimony was also necessary to explain how the hole "should have been capped or what should have been done or how often people should have been going to review it to [e]nsure the safety of the worksite . . . ." The judge concluded these issues required "technical knowledge" possessed only by an expert.

Plaintiff moved for reconsideration. She argued the judge erred by relying on Jacobs and ignoring the other cases cited in her brief in opposition to summary judgment. The judge also failed to consider the "probative competent evidence" in the record.

Plaintiff asserted the judge misinterpreted <u>Jacobs</u> because the facts in her case were just as simple and undisputed. Therefore, even under <u>Jacobs</u>, summary judgment was improper because the fact of plaintiff falling into a hole would be easily understood by a jury. The curb height was therefore immaterial. Furthermore, the deposition testimony established a prima facie case of negligence. The president of Smith Sondy testified the installation of temporary asphalt was Smith Sondy's responsibility, and the temporary asphalt did not extend to the curb and should have until the road was fully paved to assure pedestrian safety.

The motion judge denied reconsideration. He reiterated this case was unlike <u>Jacobs</u>, and an expert was necessary to establish the standard of care and deviation from it, because the issues were esoteric and would cause a jury to speculate. An expert was also required to explain "the different component parts, different levels[] of the strata, . . . the asphalt substrata[,] . . . the other materials, and the obligation of different persons. The . . . milling and . . . the resurfacing, and the temporary surfacing, and . . . the implications of all that . . . . "

I.

A-0642-23

Our review of an order granting summary judgment is de novo. Graziano v. Grant, 326 N.J. Super. 328, 338 (App. Div. 1999). We consider all the evidence submitted "in the light most favorable to the non-moving party" and determine if the moving party is entitled to summary judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"Motions for reconsideration are granted only under very narrow circumstances . . . ." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002). Reconsideration should be used only for those cases where "either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). We review a trial court's denial of reconsideration for abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).

## II.

Plaintiff asserts summary judgment was improperly granted because the evidence established each defendant's duty and the breach thereof. Smith Sondy had a duty to exercise reasonable care to maintain a construction site in safe condition, including handle the curb ramping, and failed to do so. The county

9

was also liable because it had constructive notice of the dangerous condition left by Smith Sondy, and should have had an inspector on site daily, who should have discovered the dangerous condition.

Given these facts, plaintiff argues liability expert testimony is unnecessary because specialized knowledge would not assist the jury in understanding the evidence. The case had nothing to do with the responsibilities of multiple entities. And the fact that plaintiff fell into a hole or depression also was not so esoteric as to be beyond the ken of a jury.

Plaintiff reiterates the motion judge erred because he focused only on Jacobs, ignored the other case law she cited, and compounded the error on reconsideration. Those cases were: Raimo v. Fischer, 372 N.J. Super. 448 (App. Div. 2004); Maison v. New Jersey Transit Corporation, 460 N.J. Super. 222 (App. Div. 2019); Butler v. Acme Markets, Inc., 89 N.J. 270 (1982); and Scully v. Fitzgerald, 179 N.J. 114 (2004).

To defeat a motion for summary judgment in a negligence action, a plaintiff must present competent evidence of a duty, breach of the duty, causation, and damages. Siddons v. Cook, 382 N.J. Super. 1, 13 (App. Div. 2005). Breach occurs when a defendant's "conduct . . . falls below a standard recognized by the law as essential to the protection of others from unreasonable

risks of harm."  Marshall v. Klebanov, 378 N.J. Super. 371, 378 (App. Div. 2005) (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)).  The question is "'whether [a] reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others' by [their] conduct."  Est. of Narleski v. Gomes, 244 N.J. 199, 226 (2020) (quoting Kelly v. Gwinnell, 96 N.J. 538, 543 (1984)).

"In most negligence cases, the plaintiff is not required to establish the applicable standard of care."  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citing Sanzari, 34 N.J. at 134).  "It is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were.  The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent [person] in the position of the defendant would have taken."  Id. at 406-07 (first and second alterations in original) (citation omitted).  "Such cases involve facts about which 'a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion.'"  Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

"In some cases, however, the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead

'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.'" Ibid. (alterations in original) (citations omitted); see also N.J.R.E. 702 (permitting expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

"The necessity of expert testimony is determined by the sound exercise of discretion by the trial judge." Maison, 460 N.J. Super. at 232. "[W]hen deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Davis, 219 N.J. at 407 (alteration in original) (quoting Butler, 89 N.J. at 283); see also Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 394 (2001) (holding expert testimony was not needed when the jury's "common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence" (quoting Est. of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999))).

In cases where "the factfinder would not be expected to have sufficient knowledge or experience[,]" expert testimony is needed because the jury "would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc.,

12

342 N.J. Super. 419, 430 (App. Div. 2001) (citing Kelly v. Berlin, 300 N.J. Super. 256, 268 (App. Div. 1997)). This is especially true when the alleged negligent act or omission involves technical or specialized matters. Davis, 219 N.J. at 407.

The following cases are examples of where expert testimony was required to establish the standard of care: "ordinary dental or medical malpractice," Sanzari, 34 N.J. at 134-35; "the responsibilities and functions of real-estate brokers with respect to open-house tours[,]" Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 444 (1993); "the safe conduct of a funeral procession," Giantonnio, 291 N.J. Super. at 44; the "conduct of those teaching karate[,]" Fantini v. Alexander, 172 N.J. Super. 105, 108 (App. Div. 1980); "applying pertinent skydiving guidelines[,]" Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 215 (App. Div. 2002); the "repair and inspection" of automobile engines, Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 237 (App. Div. 2012); "the inspection of fire sprinklers by qualified contractors[,]" Davis, 219 N.J. at 408; and the duties of a licensed nurse when "a patient dislodges [their] [medical] tube and refuses its reinsertion," Cowley v. Virtua Health System, 242 N.J. 1, 9 (2020).

A-0642-23

Conversely, expert testimony was not required to establish the standard of care as to: "the dangers that might follow when a lit cigarette is thrown into a pile of papers or other flammable material[,]" Scully, 179 N.J. at 127; whether an attorney in a malpractice suit should have "briefed an issue[,]" "report[ed] . . . settlement discussion[s] accurately[,]" or "recommend[ed] a disposition of the case" after settlement discussions, Sommers v. McKinney, 287 N.J. Super. 1, 12 (App. Div. 1996); or the "risk involved in [a chiropractor] repeating the further neck adjustment[s]" after the chiropractor knew the patient became uncharacteristically dizzy and unwell after treatment, Klimko v. Rose, 84 N.J. 496, 505 (1980).

At the outset, we reject plaintiff's assertion the motion judge did not address the case law she cited. The judge found the cases were inapposite when he adjudicated the reconsideration motion.

Indeed, Maison pertained to the legal obligation of a bus driver to act before one passenger struck another with a bottle. 460 N.J. Super. at 229-30. We held an expert was not required since the facts did not involve a "complex instrumentality" because "[j]urors without any advanced knowledge could have determined that [the bus driver] should have done something, rather than nothing." Id. at 233.

Scully involved a negligence claim by a first-floor tenant against his landlord for fire and water damage to the tenant's property. 179 N.J. at 119. The landlord stored gasoline-operated yard equipment, gasoline, mulch, old papers, refuse, debris, and garbage in a storage area, which then caught fire when his "second-floor tenants [who] regularly smoked cigarettes on the deck above the storage area" threw their discarded butts near the storage area. Id. at 119-20. The Supreme Court rejected the defendant's argument that the standard of care had to be established by expert testimony because "[a] jury does not need a fire expert to explain to it the dangers that might follow when a lit cigarette is thrown into a pile of papers or other flammable material." Id. at 127.

Butler involved a claim against a supermarket owner by a plaintiff who was attacked outside the supermarket. 89 N.J. at 274. The plaintiff alleged the defendant was negligent in failing to warn her and failing to provide a safe place to shop and park because there had been several muggings in the same location prior to plaintiff's incident. Ibid. The Supreme Court ruled the absence of expert testimony was not fatal to the plaintiff's ability to establish negligence because the defendant as a "business invitor is in the best position to provide either warnings or adequate protection for its patrons when the risk of injury is

15

prevalent under certain conditions, and because the public interest lies in providing a reasonably safe place for a patron to shop . . . ." Id. at 284.

In Raimo, we addressed a contractor's duty to maintain the premises where it performs work in a reasonably safe condition for a person whom it may reasonably expect to come onto the site. 372 N.J. at 454. There, the plaintiff and his brother entered a construction site to meet with an employee of the builder. Id. at 451. When they learned the employee was not there and began to descend a staircase to exit the property, it gave way causing the plaintiff to be severely injured. Ibid. Plaintiff subsequently sued the homeowners, the general contractor, and the builder who was subcontracted, for negligence. Ibid.

We reversed summary judgment in favor of the subcontractor on grounds of the common law doctrine of premises liability and held the trial court should have applied general negligence principles to decide liability under the facts presented. Id. at 452. The facts showed the subcontractor had attached the temporary staircase the plaintiff used to enter the building. Id. at 451. The subcontractor knew the staircase had been detached from the home the night he left the site, and when he returned the following day, it was resting against the home again, but he admitted he failed to check whether the staircase was reaffixed to the house by screws and nails in the same manner he had originally

A-0642-23

attached it. Id. at 457. We concluded "a trier of fact could find [the subcontractor] was negligent in failing to inspect the staircase on the morning of [the] plaintiff's accident to ensure that it was properly reattached to the house." Id. at 458.

The motion judge correctly found these cases were inapposite. On their face, the facts in Maison and Scully simply were not so esoteric as to require the input of an expert. And the facts in Butler demonstrated the defendant knew of the danger to its customers because it had hired off-duty police officers to patrol the supermarket yet posted no warning signs for its patrons and had no one on duty in the parking lot when the plaintiff was attacked. 89 N.J. at 274-75. Moreover, there were countervailing public interest issues unique to a business invitee that did not apply here. Id. at 284. The dispute in Raimo did not regard whether expert testimony was necessary. See 372 N.J. Super. at 450. Regardless, the facts of the case clearly established liability given the subcontractor's admissions and were not esoteric.

Finally, the judge did not err by relying upon Jacobs to measure whether expert testimony was required here. Like plaintiff's case, that case involved a similar modality of injury and similar questions regarding the defendant's responsibilities. See 452 N.J. Super. at 496-97. However, unlike here, Jacobs

17

did not involve multiple defendants, engaged in a complex road paving project, governed by standards that a jury would be able to discern using their "common knowledge as lay persons . . . ordinary understanding and experience, to determine a defendant's negligence . . . ." Reed, 168 N.J. at 394. As the motion judge noted, "[t]he negligence asserted has to do with the manner in which the defendants conducted . . . the street rehabilitating operation. The . . . milling, the temporary asphalt surfaces. The different levels. The different strata of materials." The standard of care for a roadway milling and repaving project, defendant's roles in the project, and whether they deviated from the standard of care was esoteric and could not be established without the aid of an expert.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0642-23