**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4925-17T2

DAWN O'NEILL,

      Plaintiff-Appellant,

v.

ROBERT NEUSCH and
LINDA NEUSCH,

      Defendants-Respondents.

_____

              Submitted March 6, 2019 – Decided August 29, 2019

              Before Judges Alvarez and Nugent.

              On appeal from the Superior Court of New Jersey,
              Law Division, Union County, Docket No. L-1740-16.

              Timothy M. O'Donovan, attorney for appellant.

              Methfessel & Werbel, attorneys for respondents
              (Lori Brown Sternback, on the brief).

PER CURIAM

      Plaintiff, Dawn O'Neill, appeals the summary judgment dismissal of her personal injury action. She alleged in the complaint that she was seriously

injured when she was caused to fall down the exterior steps of her sister's home due to a negligently maintained handrail. The trial court granted summary judgment to defendants, her sister and brother-in-law, after determining they breached no duty owed to plaintiff and the guardrail on the exterior stairs was not a proximate cause of plaintiff's fall. Because genuinely disputed issues of material fact existed as to both issues, we reverse and remand for trial.

Plaintiff commenced this action by filing a complaint in May 2016. Defendants filed an answer, the parties completed discovery, and thereafter defendants filed a summary judgment motion. According to plaintiff's brief, defendants filed the motion "solely on the grounds of lack of proximate cause." During oral argument, however, defendants argued not only that the handrail on the exterior stairs of their home was not the proximate cause of plaintiff's accident, but also that they owed no duty to plaintiff, a social guest. The trial court resolved both issues in defendants' favor and entered the order for summary judgment from which plaintiff appeals.

Construed in the light most favorable to plaintiff as the non-moving party, Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 256 (2018), the summary judgment record contains the following facts. On the day plaintiff fell, she was visiting her sister, Linda Neusch, and her brother-in-law, Robert

Neusch, at their Cranford home. Plaintiff had visited her sister on a regular basis, approximately once each week, for approximately ten years. Plaintiff and her brother, Fred, spent the afternoon and evening with their sister and brother-in-law, and had dinner with them. Before dinner, plaintiff had done some wash. Plaintiff's accident happened as she left the house.

A person exiting defendants' home through the exterior door had to traverse five steps between the door and the ground. There were handrails on each side of the steps. In interrogatories and her deposition, plaintiff attributed her fall to an unstable handrail and described her attempt to grab the left handrail:

> Q:    Okay. If you could briefly, just in your own words, describe to me what happened.
>
> A:    I walked out the door. I had my laundry in my [r]ight hand, and when I got to the top of the stairs I went to put it over my shoulder and I kind of, like, had to grab my -- not that I lost my balance, but just to situate myself and I went to grab onto the hand railing and then I fell.
>
> Q:    Okay. Did you and Fred leave at the same time?
>
> A:    Yes.
>
> Q:    Okay, and was Fred in front of you or behind you?
>
> A:    Behind me.

 A-4925-17T2

Asked to describe the movement of the handrail when she grabbed it, plaintiff testified at her deposition as follows:

> A:     I don't recall. I know I grabbed the handrail, it shifted and my -- I guess when I was walking down is when, but I don't recall which foot was first or anything.
>
> Q:     Okay. So what happened when you grabbed the handrail?
>
> A:     It gave way. It, like, kind of shifted.
>
> Q:     What do you mean it kind of shifted?
>
> A:     So it gave way. Like, instead of being steady when I grabbed onto it, it shifted right -- like, if I'm grabbing on it here (indicating), it shifted. It wasn't steady.
>
> Q:     Could you describe if you can in relative terms of distance how much it shifted? Did the whole railing come loose? Was it a minor - -
>
> A:     I don't know – I don't know about distance. I just know it was a reasonable shift. I don't know distance.

Plaintiff's brother, who witnessed plaintiff fall, gave a statement in which he explained how she fell when she grabbed the handrail and it gave out. He examined the handrail after plaintiff fell. He described what he observed: "While we were waiting for the ambulance, I checked the handrail and it was extremely loose and wobbly. It was unstable and I could see why it did not give [plaintiff] any support."

A-4925-17T2

Over the years, plaintiff had noticed some issues with the handrails, but in her judgment, "not severe issues." For example, she had noticed "they had the things re-cemented and I notice[d] that . . . both of them [were] actually a little bit loose, but not anything that would make me question it." This was nothing more than a general observation she had made over the years.

Plaintiff's brother-in-law testified he had problems with the handrails over the years. He testified at his deposition that the posts that supported the handrails "go[] into the stairs." He explained that when water collected around the handrail posts, where they go into the stairs, and the water freezes, the supporting concrete tended to crack, so he would try to have it patched. If cracks occurred, the handrails "wouldn't be held as securely as you would want it, so it did create a wobble."

Plaintiff's brother-in-law had observed the loose handrail before plaintiff's accident on May 31, 2015. He testified, "I noticed the wobble so I had it fixed." However, he also testified he did not know if the repairs were done in the winter immediately before plaintiff's accident, "or one year prior to that." He insisted he did not notice the wobble from the time he had it repaired until the date of plaintiff's accident.

A-4925-17T2

Plaintiff's sister was also aware that during the winters, the cement at the bottom of the stairs would crack and cause the rail to become loose. Specifically, she testified, "[i]t would seem that after every winter it would crack or after every other winter it would crack." The last time her husband had the situation repaired was approximately two years before plaintiff's accident. Nonetheless, plaintiff's sister could recall no issues with the handrails being loose before plaintiff's accident. Following the accident, plaintiff's sister observed that the handrail "shook," that is, it moved right to left.

Plaintiff produced two expert reports. Their narratives as well as the photographic evidence referenced in the reports showed the stairway on defendants' home consisted of four treads and five risers with a concrete landing at the top of the stairway.

The first expert opined plaintiff's injury was "caused by the loose and unsecured left handrail that made a sudden movement as she attempted to grab it after losing her balance." The first expert inspected the steps and found "the left and right handrails move since they are not fully secured where the posts are imbedded into the steps." The expert explained "[t]his loose fit allows the handrails to move. In addition, these handrails had parts come apart in the past with an attempt to hold them together as can be seen in [the photographs he

6 <span>A-4925-17T2</span>

took]." He opined "[t]hese repairs do not appear to have been completed by a skilled iron worker and may have been done by the homeowner."

The first expert documented in one photograph that "the front post is disconnected from the top rail of the left hand railing. The connection appears to be the original weld that has broken[.] Pushing the top rail allows it to jump away from the post since the broken weld does provide some resistance before it suddenly becomes free and jumps toward the driveway about [one-quarter] of an inch." The expert explained how the sudden movement of the loose handrail would cause someone to fall.

Plaintiff's second expert reviewed a video of the railing "taken some time shortly after the subject accident," as well as witness statements, interrogatory answers, and other expert reports. Commenting on the first expert's report, the second expert said:

> While I agree that the condition of the interface between the railing and the front post contributed to this accident, the unsecured condition of the overall handrail also allowed movement beyond that of a properly maintained and secured handrail preventing the plaintiff from regaining control after losing her balance at the top of the subject stairway.

The second expert also opined the improperly maintained handrails on the stairs were a proximate cause of plaintiff's accident.

7

Appellate courts "review[] an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citations omitted). Our function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)); accord R. 4:46-2(c). A trial court's determination that a party is entitled to summary judgment as a matter of law is not entitled to any "special deference," and is subject to de novo review. Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016) (citation omitted).

Here, the parties do not dispute that plaintiff was a social guest at her sister's home. The model jury charge explains a host's duty to a social guest:

> A social guest is someone invited to his/her host's premises. The social guest must accept the premises of his/her host as he/she finds them. In other words, the host has no obligation to make his/her home safer for his/her guest than for himself/herself. The host also is not required to inspect his/her premises to discover defects that might cause injury to his/her guest.
>
> If, however, the host knows or has reason to know of some artificial or natural condition on the premises which could pose an unreasonable risk of harm to his/her guest and that his/her guest could not be reasonably expected to discover it, the owner/occupier owes the social guest a duty to exercise reasonable care

to make the condition safe or to give warning to his/her guest of its presence and of the risk involved. In other words, although a social guest is required to accept the premises as the host maintains them, he/she is entitled to the host's knowledge of dangerous conditions on the premises. On the other hand, where the guest knows or has reason to know of the condition and the risk involved and nevertheless enters or remains on the premises, the host cannot be held liable for the accident.

[Model Jury Charges (Civil), 5.20F, "Duty Owed – Condition of Premises" (approved Mar. 2000)].

Construing the summary judgment record in the light most favorable to plaintiff as the non-moving party, we conclude a reasonable jury could infer defendants either knew, or had reason to know, of the dangerous condition caused by the loose railings. Defendants knew that winter weather conditions caused the cracking in the cement or concrete in which the handrail's vertical poles were anchored. Plaintiff's sister testified the condition was last repaired two winters before the accident. Moreover, unlike plaintiff, defendants lived in the home and used their exterior stairs frequently, perhaps daily. These facts give rise to a reasonable inference that they were aware the railings were not secured and would move when gripped. It is undisputed defendants did not inform plaintiff about the condition of the handrails.

In contrast, plaintiff testified that although she had observed some problems with the railings over the years, including the fact that sometimes they

A-4925-17T2

were a bit loose, there is no evidence she observed the condition of the "extremely loose and wobbly" railing described by her brother and depicted in the video taken of the railing shortly after her accident. Moreover, a jury could readily infer from plaintiff's description of how she fell that the loose railing was a proximate cause of her accident. A reasonable jury could infer that the sudden movement of the railing as plaintiff attempted to steady herself is what caused her to fall.

The motion record demonstrates not only numerous genuinely disputed material facts concerning liability and proximate cause, but also significant credibility questions. "Ordinarily, issues of proximate cause are considered to be jury questions." Broach-Butts v. Therapeutic Alts., Inc., 456 N.J. Super. 25, 39 (App. Div. 2018) (quoting Perez v. Wyeth Labs. Inc., 161 N.J. 1, 27 (1999)). In other words, "[w]hile the existence of a duty is a question of law to be determined by the court, whether the landlord breached that duty and created an unreasonable and foreseeable risk of harm to the plaintiff is a question for a jury." J.H. v. R & M Tagliareni, 454 N.J. Super. 174, 182 (App. Div. 2018).

For the foregoing reasons, we reverse the summary judgment and remand the matter for trial. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4925-17T2